[No. B157751. Second Dist., Div. Three. June 20, 2003.]

SANTA MONICA RENT CONTROL BOARD, Plaintiff and Appellant, v. PEARL STREET, LLC, et al., Defendants and Respondents.

## COUNSEL

Doris M. Ganga and Michaelyn Jones for Plaintiff and Appellant.

Law Offices of Rosario Perry, Rosario Perry and Dionne M. Marucchi for Defendant and Respondent Robert Hackamack.

Renay G. Rodriguez for Defendants and Respondents Pearl Street, LLC, and Rosario Perry.

## OPINION

**CROSKEY, Acting P. J.**—In this appeal, plaintiff, the Santa Monica Rent Control Board (the Board),[1] challenges orders that (1) granted defendants' special motion to strike the Board's complaint, and (2) awarded defendants attorney's fees and costs. Defendants are Pearl Street, LLC, a limited liability company, Rosario Perry, sued as manager of Pearl Street, LLC, and Robert Hackamack (Pearl Street, Perry, and Hackamack, collectively defendants).[2]

The Board filed this suit for declaratory and injunctive relief because it contends that portions of state and local rent control law have been violated by defendants in their ownership or management of a four-unit residential rental property at 1028 Pearl Street in the City. Rental of such property is subject to article XVIII and to relevant provisions of state law.[3]

This case concerns the Board's skepticism about the nature of defendants' rental of two of the four rental units. Specifically, the Board asserts defendants created sham tenancies to enable themselves to fulfill the letter of state rent control law while avoiding the economic constraints of the spirit of such law. That law provided that when a landlord withdrew a residential unit from the rental market and then later restored that unit to the market, the rent charged for the initial tenancy upon such restoration could not be greater than it would have been if the units had not been withdrawn. However, when

---

[1]The Board is the government agency of the City of Santa Monica (the City), that is charged with implementation and enforcement of the City's rent control law, article XVIII of the City's charter (article XVIII).

[2]In the "summary" portion of his brief, defendant Hackamack contends he is not a proper party because the Board has no cause to sue him. That is a matter for the trial court in an appropriate motion. We do not address it any further.

[3]Also named in the complaint are real parties in interest, Roes 1 through 10, who the complaint alleges are currently renting two of the rental units at the subject property.

such initial tenancy of a restored unit was *legally* terminated by the landlord or the tenant, the landlord would then be free to charge the next tenant market rent for the unit. In the instant case, the Board was presented with facts that raised a suspicion as to whether defendants' initial rental of two units[4] after their restoration to the rental market were legitimate tenancies or simply sham rentals for an intentionally short duration in order to permit the defendants to charge market rents upon the termination of the initial tenancies. Upon learning of the suspicious rentals, the Board filed this suit, alleging that defendants were not legitimately entitled to charge market rate for the rentals.

Defendants filed a special motion to strike the Board's complaint based on their contention that the lawsuit constituted what is known as a "SLAPP"—a strategic lawsuit against public participation.[5] The trial court agreed that this case is a SLAPP, and on that basis, granted the special motion to strike the complaint, and awarded defendants attorney's fees and costs.

---

[4]We are here concerned with two of the four units at 1028 Pearl Street. Those units are designated as units A and C.

[5]Defendants' special motion to strike the complaint was brought under section 425.16 of the Code of Civil Procedure, the anti-SLAPP statute (section 425.16). Section 425.16 was enacted because of a "disturbing increase in lawsuits brought primarily to chill the valid exercise of the constitutional rights of freedom of speech and petition for the redress of grievances.[and because] it is in the public interest to encourage continued participation in matters of public significance, and . . . this participation should not be chilled through abuse of the judicial process." (§ 425.16, subd. (a).)

Section 425.16 provides: "A cause of action against a person *arising from* any act of that person in furtherance of the person's right of petition or free speech under the United States or California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim." (*Id.* subd. (b)(1), italics added.)

When ruling on a special motion to strike, "the court shall consider the pleadings, and supporting and opposing affidavits stating the facts upon which the liability or defense is based." (§ 425.16, subd. (b)(2).) A defendant who prevails on such a motion is entitled to recover its attorney's fees and costs. (*Id.*, subd. (c).)

Section 425.16 addresses causes of action that arise from acts taken by the defendant "in furtherance of the [defendant's] right of petition or free speech under the United States or California Constitution. in connection with a public issue." (§ 425.16, subd. (b)(1).) Subdivision (e) of that statute explains that the phrase " 'act in furtherance of a person's right of petition or free speech under the United States or California Constitution in connection with a public issue' includes (1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law; (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law; (3) any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest; (4) or any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest."

Our review of the record, as well as applicable law, convinces us that defendants failed to meet their burden of showing that the basis of this suit is an act taken by defendants in furtherance of their constitutional right of petition or free speech. Therefore, the order striking the Board's complaint must be reversed, as must the order awarding defendants attorney's fees and costs, as the latter order was based on defendants' having prevailed on their special motion to strike. The case will be remanded for further proceedings.

BACKGROUND OF THE CASE[6]

1. *Allegations of the Complaint Regarding the History of the Subject Residential Rental Building*

According to the Board's complaint, defendant Hackamack is a member and/or manager of Pearl Street. He owned the subject property from May 3, 1990, to December 12, 2000, and title to the property was transferred to defendant Pearl Street on the latter date.

Prior to such transfer of title, Hackamack, on July 1, 1999, filed notice with the Board that he intended to withdraw the property from the rental market.[7] The date of withdrawal was August 30, 1999.

According to such notice of withdrawal, one Arlynn Hackamack was the tenant in unit A. The notice identified her as the "owner's mother" and stated that she paid no rent. A Leslie Boraz was identified as the tenant of unit B, with a rent of $635. Walter and Ruth Schechter were identified as the tenants of unit C, with a rent of $464. The notice identified Gayle Hackamack and defendant Robert Hackamack as the tenants of unit D and stated that they paid no rent. On August 30, 1999, the tenancies of Leslie Boraz (Boraz) and Walter and Ruth Schechter (Schechter) were terminated by eviction notices served by Hackamack.

Then, on September 14, 2000, Hackamack filed a notice with the Board of his intention to restore the subject property to the rental market. On that same day, he filed an application for a permit for occupancy of the subject property as residential rental property.

---

[6]Defendants have engaged in an inappropriate style of appellate briefing. Defendant Hackamack's brief, and defendants Pearl Street and Perry's brief, contain no citations to the record (by means of reference to a specific page number in the appellate record) for their assertions of fact and procedural occurrence, a violation of California Rules of Court, rule 14(a)(1). Moreover, defendants Pearl Street and Perry's brief incorporates by reference points and authorities contained in trial court papers, which is also inappropriate. (*Garrick Development Co. v. Hayward Unified School Dist.* (1992) 3 Cal.App.4th 320, 334 [4 Cal.Rptr.2d 897].)

[7]Government Code section 7060.4 permits the City's rent control law to provide for such a notice. Government Code section 7060.4 is part of the Ellis Act (Gov. Code, § 7060 et seq.).

Displaced tenants Boraz and Schechter sent the Board copies of the notices they had served on Hackamack indicating they desired to rerent their former units. However, rather than offering the units to Boraz and Schechter, Hackamack paid them statutory damages pursuant to Government Code section 7060.2.

On September 20, 2000, the Board wrote to Hackamack, acknowledging his notice of intent to rerent the withdrawn rental units, and advising him of the restrictions on how much rent he could charge for the initial rerental tenancies of the previously withdrawn units, citing Government Code section 7060.2.

Subdivision (f)(1) of section 1803 of the City's rent control law authorizes the Board to set a maximum allowable rent for a rent-controlled unit. Section 7060.2 of the Government Code provides that when a previously withdrawn unit is restored to the rental market, and such unit is subject to local rent control and was so subject at the time it was withdrawn from the rental market, the *first* rent charged for the unit upon rerental shall be no greater than the rent that would be in effect if the unit had not been withdrawn from the rental market. When the subject property was restored to the rental market, the maximum allowable initial rent for units A and C was $467 each. The appellate record contains copies of rental agreements for restored units A and C, showing that those units were rented on a month to month basis, commencing on November 1, 2000, for such maximum allowable initial rent.

On February 20, 2001, Pearl Street filed a "vacancy unit registration" for unit C. The registration stated that unit C was being rented for $1,750, for a tenancy commencing February 1, 2001. Thus, the tenancy for that unit that had commenced on November 1, 2000, with a monthly rent of $467, was shown to be a three-month tenancy.

Then, on May 17, 2001, Pearl Street filed a vacancy unit registration for unit A. It stated that unit A was being rented for $1,661, for a tenancy beginning May 11, 2001, and that the previous tenant had vacated unit A in January 2001. Thus, the November 1, 2000 rental of unit A was also a three-month tenancy. The rental agreement identified Arlynn Hackamack (defendant Hackamack's mother) as that three-month tenant.

2.   *The Board's Allegations of Wrongdoing*

In its complaint, the Board alleged that, contrary to the information on the vacancy unit registrations that Pearl Street filed for units C and A, (1) the

*first* rental period for unit C following its return to the rental market was actually the tenancy commencing on February 1, 2001, and (2) Arlynn Hackamack, a former owner of the property, was not actually a legitimate tenant of unit A and she did not pay rent for the occupancy of that unit. The Board also had evidence that there was no tenant at all in unit C during the November 1, 2000, to January 31, 2001 period.[8]

The complaint contains two causes of action—for declaratory relief and for injunctive relief. The Board sought a judicial determination that the maximum allowable rent for the February 1, 2001 rental of unit C, and the May 11, 2001 rental of unit A was $467 each. The Board also sought injunctive relief on behalf of the real parties in interest tenants that had rented units A and C, specifically, that defendants be prohibited from charging those parties more than the maximum allowable rents that would have been in effect for units A and C had such units not been withdrawn from the rental market. The Board alleged that the City's rent control law was enacted for the public's benefit and the public would be harmed if defendants were permitted to charge a rent that violated the Ellis Act and the Board's regulations. It further alleged it had been judicially enjoined from administratively changing the rent that defendants are charging for units A and C.[9]

### 3. *Defendants' Motion to Strike*

Defendants responded to the Board's action with a special motion to strike the complaint. Defendants asserted that the Board's action was an attempt to punish them for following the statutory procedure for an upward adjustment of the amount of rental on the subject units. They contended that the Board improperly chilled their right, and the rights of others similarly situated, to seek redress of government by means of the rent control process established by the rent control law.

---

[8]In support of its opposition to defendants' section 425.16 special motion to strike, the Board submitted (1) the City's water-billing records for the subject property, which the Board argues show that water consumption levels for the subject property from November 1, 2000, to January 31, 2001, "did not reflect full occupancy," and (2) declarations from two people who reside in a residential building two doors away from the building that is the subject of this suit. These two people are the sons of the former tenants of unit C—Walter and Ruth Schechter. According to the declarations, unit C can be seen from both inside and outside of the premises where one of the sons lives. The other son visits that premises several times a week. Both sons stated that they monitored their parents' former apartment to see if anyone moved in there, and from November 1, 2000, through January 30, 2001, they did not see any sign of unit C being occupied. They saw no sign of anyone moving in or out of unit C, saw no one come or go from that unit, and saw no open door, window or window blind at unit C.

[9]This order restricting the Board's administrative power is discussed *infra*.

The special motion to strike was heard and granted on December 7, 2001. An order of dismissal was signed and filed by the court on January 2, 2002. Notice of entry of the order was served by defendants on January 24, 2002.[10]

Defendants moved for attorney's fees and costs, pursuant to subdivision (c) of section 425.16. The motion was granted on February 5, 2002. Thereafter, the Board filed a timely notice of appeal from the order of dismissal and the order awarding fees and costs.

## ISSUES ON APPEAL

The Board contends that the anti-SLAPP statute has no application to this case. It asserts that even though this suit may have been triggered by the filing of the notices of intention to rerent units A and C at market prices after what defendants assert are legitimate initial three-month rental periods upon restoration to the rental market, and even though the filing of such notices may be an act in furtherance of defendants' right of petition or free speech, the suit is not *based on* defendants' act of filing the relevant documents. Rather, the suit is based on the dispute between the Board and defendants as to whether defendants are entitled to charge market rents for units A and C, or whether such units are still subject to rent control restrictions for initial rerentals of units previously withdrawn from the rental market.

Defendant Hackamack contends the Board has no cause of action for declaratory relief because there is no actual controversy between himself and the Board. He further contends this suit was only filed as a means around an order issued in a prior case that prevented the Board from administratively enforcing certain of its regulations.

## DISCUSSION

1. *The Nature of a Section 425.16 Motion, and the Appropriate Standard of Review*

A section 425.16 special motion to strike involves a two-step analysis. This includes determining first whether the plaintiff's cause of action arose from an act taken by the defendant in furtherance of the defendant's right of petition or free speech, and if it did so arise, then determining whether the plaintiff has shown a probability of prevailing on the claim in

---

[10]Defendants also generally demurred to the complaint; however the court declared the demurrer moot and placed it off calendar when it granted the special motion to strike. We do not address the demurrer here.

the complaint. The defendant bears the burden on the first question, and the plaintiff on the second. If the court determines the cause of action did not arise from such protected activity, the motion to strike must be denied. (*Equilon Enterprises v. Consumer Cause, Inc.* (2002) 29 Cal.4th 53, 67 [124 Cal.Rptr.2d 507, 52 P.3d 685]; *Gallimore v. State Farm Fire & Casualty Ins. Co.* (2002) 102 Cal.App.4th 1388, 1396 [126 Cal.Rptr.2d 560] (*Gallimore*).)

When reviewing a ruling on a defendant's section 425.16 special motion to strike a complaint, we employ our independent judgment. (*Gallimore, supra,* 102 Cal.App.4th at p. 1396.) In the instant case, defendants have not met their burden of showing that the Board's claims arose from acts taken by defendants in furtherance of their right of petition or free speech.

### 2. *This Suit Is Based on the Alleged Act of Charging Unlawful Rent, Not on the Act of Filing Documents with the Board*

The instant case involves a situation quite similar to one we addressed in *Gallimore, supra,* 102 Cal.App.4th 1388. In both cases, the plaintiffs filed suit based on allegedly wrongful acts that came to the plaintiffs' attention by way of information in documents that the defendants filed with an administrative agency.[11] Defendants in both cases sought to have the complaints stricken by asserting that the causes of action against them arose from their having presented such documents to the administrative agencies. Here, as in *Gallimore,* that assertion must fail.[12]

As noted above, section 425.16 addresses itself to causes of action that *arise from* acts taken in furtherance of a defendant's right of petition or free speech in connection with a public issue. Our Supreme Court has made it clear that a plaintiff's cause of action does not necessarily *arise from* a defendant's section 425.16 protected activity merely because the plaintiff's

---

[11]In *Gallimore,* the plaintiff (an individual acting as a private attorney general), alleged the defendant insurer had engaged in the mishandling of insurance claims, constituting unfair business practices. The allegation was based on an investigation of the defendant insurer conducted by the California Department of Insurance, in which the defendant had supplied information to the department. The insurer, in its section 425.16 motion, asserted it was being sued for its having communicated with the department in furtherance of its right of petition or free speech. We rejected that notion, finding that the insurer was being sued for actions allegedly undertaken by it prior to such communications. We said that the insurer was confusing its allegedly wrongful acts with the evidence the plaintiff might use to prove the alleged misconduct. We said that just because the suit was filed shortly after a report from the department containing the information given by the defendant to the department became public, that did not mean that the suit arose from the defendant's supplying of information contained in the report. (*Gallimore, supra,* 102 Cal.App.4th at pp. 1399-1400.)

[12]Despite the obvious application of *Gallimore* to this case, none of the defendants discussed (or even cited) *Gallimore* in their briefs.

suit was filed *after* the defendant engaged in that activity. (*City of Cotati v. Cashman* (2002) 29 Cal.4th 69, 76-78 [124 Cal.Rptr.2d 519, 52 P.3d 695] (*City of Cotati*).) "The anti-SLAPP statute cannot be read to mean that 'any claim asserted in an action which arguably was filed in retaliation for the exercise of speech or petition rights falls under section 425.16, whether or not the claim is *based on* conduct in exercise of those rights.' [Citations.]" (*Id* at p. 77.) The Supreme Court said that the phrase "arising from" in section 425.16 should not be construed as meaning "in response to." (*City of Cotati*, at p. 77.) "In short, the statutory phrase 'cause of action . . . arising from' means simply that the defendant's act underlying the plaintiff's cause of action must *itself* have been an act in furtherance of the right of petition or free speech. [Citation.]" (*Id.* at p. 78.) A cause of action may be "triggered by protected activity" without necessarily arising from such protected activity. (*Ibid.*)[13]

■  Here, defendants claim their protected activity is the filing of paperwork, with the Board, to restore units A and C to the rental market, and to assert that an initial "first re-rental" of such units had occurred prior to the tenancies commencing on February 1 and May 11, 2001, respectively. For purposes of our analysis, we will assume that such administrative activities were undertaken by defendants in furtherance of their right of petition or free speech, as that phrase is used in section 425.16. But defendants were not sued for their conduct in exercising such constitutional rights. They were sued by the Board to compel their compliance with the provisions of the rent control law.

Thus, while this suit may have been "triggered by" defendants' submission of such documents to the Board, it is *not* true that this suit is *based on* the filing of such papers. Rather, the suit is based on activity that preceded the filing of the papers. *This suit is based on the Board's claim that defendants are charging an illegal rent for units A and C.* Not surprisingly, defendants have not presented any authority for the proposition that their conduct in charging illegal rent is an act in furtherance of their rights of petition or free speech. If we were to accept defendants' argument, then they could preclude any judicial review of their violation of the rent control law, no matter how egregious, by simply filing a SLAPP motion in response to any Board complaint. We are confident that the Legislature intended no such application of this statute.

Defendants have thus not met their threshold burden of showing that this suit is based on protected activity. Therefore, the Board is not required to

---

[13]Defendant Hackamack addressed *City of Cotati* in his brief, but he appears to have missed the point of that case, even though the point was addressed in plaintiff's opening brief. Defendants Pearl Street and Perry make no reference to *City of Cotati* in their brief.

demonstrate that it has a reasonable probability of success on its claims against defendants. (*Gallimore, supra,* 102 Cal.App.4th at p. 1396.)[14]

### 3. *There Is a Present Controversy Between the Board and Defendants*

■ " 'The fundamental basis of declaratory relief is the existence of an actual, present controversy over a proper subject.' [Citation.]." (*City of Cotati, supra,* 29 Cal.4th at p. 79, italics omitted.) Here, we cannot agree with defendant Hackamack's assertion that there is no actual, present controversy between the Board and defendants. As alleged in the Board's complaint, a controversy exists over the correct amount of rent to be charged for units A and C, namely whether the initial rerental tenancies for units A and C that defendants assert commenced on November 1, 2000, were sham tenancies and therefore nonsupportive of defendants' claim that the amount of rent for subsequent tenancies was the result of a valid vacancy decontrol.

### 4. *This Suit Is Not Precluded by an Order Previously Issued Against the Board in Another Action*

■ In June 1999, in a case entitled *Cabinda, LLC v. Santa Monica Rent Control Bd.* (Super. Ct. L.A. County, 1999, No. 008112), the Los Angeles Superior Court issued an order prohibiting the Board from using its own regulations that enable it to make a per se determination that a landlord's attempt to raise the rent on a rent controlled unit is a sham. Under one regulation, a tenancy of less than four months is prima facie evidence that the tenancy is a sham, and the landlord must therefore demonstrate that it was a valid tenancy or the landlord cannot be granted a vacancy decontrol rent increase. Under a second regulation, the loss of a tenant will not be deemed a voluntary vacancy if there is a single instance of harassment or intimidation.

The superior court ruled such regulations are invalid because they conflict with provisions of the Costa-Hawkins Rental Housing Act (Civ. Code, § 1954.50 et seq.), specifically, provisions for rent increases when "the previous tenant has voluntarily vacated, abandoned, or been evicted."[15] The court stated the relevant statute contains no provisions respecting the number of months the former tenant lived in the unit, nor whether such tenant and the landlord parted friends or enemies. Moreover, said the court, the statutory provisions permit the owner to establish the amount of rent and then

---

[14]The paperwork filed by defendants in connection with restored units A and C, which they inaccurately assert is the basis of the Board's causes of action, is actually just *evidence* which the Board may perhaps use in proving its claims when this case is remanded to the trial court. (*Gallimore, supra,* 102 Cal.App.4th at pp. 1399-1400.)

[15]The quotation is from the trial court's order.

notify the Board, "not the other way round." The court ordered the Board to strike the portions of its rent control regulations that the court found preempted by state law.

On its face, the instant suit is not a violation of the court order in that prior case, and does not amount to an attempt to sidestep that order. The Board is seeking a *judicial determination* that a landlord's attempt to raise rents is a sham. The Board is asking the court to examine evidence and make a determination that defendants have attempted, by means of allegedly sham tenancies, to evade the requirements of state statutes governing rent control. The Board is not applying its own per se prima facie determinations against defendants. That is a major, and controlling, difference between this case and the *Cabinda* case. When the Board is presented with circumstances that cause it, in good faith, to believe a landlord is attempting to circumvent state or local rent control law with a sham tenancy, an action for declaratory relief is a valid means of determining whether the landlord is entitled to the rent it claims. The evidence respecting the validity of the claimed rent is under the control of the landlord and can be accessed by the Board in such a lawsuit. Certainly the intent of the order in the *Cabinda* case was not to require the Board to blindly accept as true all information submitted to it by landlords and tenants.

### 5. *The Award of Attorney's Fees and Costs Must Be Reversed*

Attorney's fees and costs were awarded to defendants by the trial court because they prevailed on their special motion to strike. (§ 425.16, subd. (c).) That statutory basis for the award no longer exists because we have determined that the Board should have prevailed on the motion to strike. Therefore, it follows that the order awarding fees and costs cannot stand.

### DISPOSITION

The orders from which the Board has appealed are reversed and the cause is remanded for further proceedings consistent with the views expressed herein. Costs on appeal to the Board.

Kitching, J., and Aldrich, J., concurred.

Respondents' petition for review by the Supreme Court was denied October 15, 2003. Baxter, J., did not participate therein.