[No. A116262. First Dist., Div. Three. Sept. 20, 2007.]

REGINA BIRKNER et al., Plaintiffs and Respondents, v.
KWAI HO LAM, Defendant and Appellant.

**COUNSEL**

Zacks Utrecht & Leadbetter, Andrew M. Zacks and James B. Kraus for Defendant and Appellant.

Stephen Collier and Dean Preston for Plaintiffs and Respondents.

## OPINION

**POLLAK, Acting P. J.**—Defendant Kwai Ho Lam appeals from the denial of his special motion to strike the complaint of plaintiffs Regina Birkner, Nyri Scanlon, Charles Birkner, and William Rogers Burton as a strategic lawsuit against public participation (SLAPP) pursuant to Code of Civil Procedure[1] section 425.16 (commonly known as the anti-SLAPP statute). The trial court determined plaintiffs' causes of action were not based upon petitioning activity protected by section 425.16. We disagree, and remand the matter for further proceedings.

## FACTUAL AND PROCEDURAL BACKGROUND

The four causes of action in the complaint, designated wrongful eviction-violation of a rent ordinance, negligence, breach of the covenant of quiet enjoyment, and intentional infliction of emotional distress, are all based on the following factual allegations. Plaintiffs are tenants of a single unit in a San Francisco apartment building owned by Lam[2] under a month-to-month rental agreement. The tenancy is subject to the San Francisco Residential Rent Stabilization and Arbitration Ordinance, San Francisco Administrative Code, chapter 37, originally enacted on June 13, 1979 (Rent Ordinance). At issue is Rent Ordinance section 37.9, subdivision (a)(8), concerning relative-move-in evictions. That provision allows a landlord to terminate a tenancy in order that the premises may be occupied, "in good faith, without ulterior reasons and with honest intent," by a relative of a landlord, to be used as the relative's principal residence, within three months of the termination and for a period of at least 36 continuous months. (*Ibid.*) However, "[a] landlord may not recover possession of a unit from a tenant under Section 37.9(a)(8) if the landlord . . . receives notice, [at] any time before recovery of possession, that any tenant in the rental unit: [¶] (A) Is 60 years of age or older and has been residing in the unit for 10 years or more; or [¶] (B) Is disabled [as defined in] Section 37.9(i)(1)(B)(i) and has been residing in the unit for 10 years or more, or is catastrophically ill [as defined in] section 37.9(i)(1)(B)(ii) and has been residing in the unit for five years or more . . . ." (Rent Ord., § 37.9, subd. (i)(1)(A), (B).) Protected tenant status does not apply, however, "where there is only one rental unit owned by the landlord in the building, or where

---

[1] All statutory references are to the Code of Civil Procedure unless otherwise indicated.

[2] Lam owns an undivided 50 percent interest in the premises; Kit Ching Ko, Eugene Kwan and Katie Concepcion, together, own an undivided 25 percent interest; and Shu Cai Lee and May May M. Lee, together, own an undivided 25 percent interest.

each of the rental units owned by the landlord in the same building where the landlord resides (except the unit actually occupied by the landlord) is occupied by a tenant otherwise protected from eviction by Sections 37.9(i)(1)(A) or (B) and where the landlord's qualified relative who will move into the unit pursuant to Section 37.9(a)(8) is 60 years of age or older." (Rent Ord., § 37.9, subd. (i)(2).) "A landlord may challenge a tenant's claim of protected status either by requesting a hearing with the Rent Board or, at the landlord's option, through commencement of eviction proceedings, including service of a notice of termination of tenancy. In the Rent Board hearing or the eviction action, the tenant shall have the burden of proof to show protected status. No civil or criminal liability under Section 37.9(e) or (f) shall be imposed upon a landlord for either requesting or challenging a tenant's claim of protected status." (Rent Ord., § 37.9, subd. (i)(4).)

On or about December 8, 2005, Lam, through counsel, served a 60-day notice to terminate tenancy (the termination notice), pursuant to Rent Ordinance section 37.9, subdivision (a)(8). Lam sought possession of plaintiffs' apartment to allow his mother to reside in the building. On or about January 6, 2006, plaintiffs' counsel notified Lam in writing that plaintiffs could not be evicted because they were protected tenants under the Rent Ordinance. Lam refused to rescind the termination notice.

The declarations filed in opposition to and support of Lam's special motion to strike added the following relevant information. After Lam moved into the apartment building, he decided to move his mother into plaintiffs' ground floor apartment. Lam's mother used a walker and had a disabled-person placard to use when being driven. At the time the termination notice was served on plaintiffs in December 2005, Lam's mother was living in an apartment that required her to climb 38 stairs to reach her unit. However, on February 2, 2006, Lam's mother died. On February 13, Lam's attorney wrote plaintiffs' attorney, informing him of the mother's death and rescinding the termination notice.

According to plaintiffs, the termination notice had been unlawful for two reasons: three of the tenants were protected from eviction because of their age or disability and length of tenancy, and the termination notice failed to comply with procedural requirements of the Rent Ordinance. Plaintiffs alleged that Lam was aware of their protected status before he served the termination notice, their apartment was not the only rental unit in the building that was available for use by Lam's mother, another unit was then occupied

by tenants who were not protected under the Rent Ordinance, and Lam had made no offer to move plaintiffs to any other rental unit owned by Lam or his family. The termination notice assertedly exacerbated plaintiffs' preexisting medical conditions, and caused them stress, frustration, insomnia and anxiety. Also, Regina Birkner alleged that she and the other plaintiffs had "many problems" with the building's owners over the years. She recounted a December 26, 2002, incident involving Lam's sister, and a November 2005 incident involving Lam.

In a reply declaration, one of Lam's attorneys asserted she was notified of the death of Lam's mother on February 7, 2006, but did not notify plaintiffs' counsel immediately because she was busy and knew plaintiffs were not going to vacate the unit. Had Lam's mother not died, counsel would have proceeded to file an unlawful detainer action. Lam also filed a reply declaration, asserting he did not own an interest in another apartment at the time the termination notice was served, and his sole intent in serving the notice was to provide a place for his mother to live to accommodate her difficulty in walking up and down stairs. If his mother had not died, he intended to file an unlawful detainer action, if necessary, but he was hoping to settle the dispute.

In denying Lam's special motion to strike, the trial court found Lam's "asserted petitioning activity was not illegal as a matter of law." However, the court concluded that Lam's conduct was not in furtherance of his right to petition within the meaning of section 425.16, so that the complaint was not based on activity protected by that section. The court did not address whether plaintiffs had made a prima facie showing they were likely to prevail on their causes of action. Lam timely appeals from the denial of his motion, as he is entitled to do by sections 425.16, subdivision (i), and 904.1, subdivision (a)(13).

## DISCUSSION

Section 425.16, subdivision (b)(1), provides: "A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States or California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim." Thus, a special motion to strike involves a two-part inquiry. First, the defendant must make a prima facie showing that a cause of action arises from an act in

furtherance of his or her constitutional rights of petition or free speech in connection with a public issue. (*Ibid.*; *Equilon Enterprises v. Consumer Cause, Inc.* (2002) 29 Cal.4th 53, 67 [124 Cal.Rptr.2d 507, 52 P.3d 685].) If such a showing has been made, the burden shifts to the plaintiff to demonstrate a probability of prevailing on the claim. (*Equilon*, at p. 67.) If the plaintiff fails to carry that burden, the cause of action is "subject to be stricken under the statute." (*Navellier v. Sletten* (2002) 29 Cal.4th 82, 89 [124 Cal.Rptr.2d 530, 52 P.3d 703] (*Navellier*).) We review the trial court's decision de novo. (*Flatley v. Mauro* (2006) 39 Cal.4th 299, 325 [46 Cal.Rptr.3d 606, 139 P.3d 2] (*Flatley*).)

### I. *Lam has satisfied the first prong of the section 425.16 analysis*

■ In analyzing defendant's burden under the first prong of the section 425.16 analysis, "the critical consideration is whether the cause of action is *based on* the defendant's protected free speech or petitioning activity." (*Navellier, supra*, 29 Cal.4th at p. 89.) "The anti-SLAPP statute's definitional focus is not the form of the plaintiff's cause of action but, rather, the defendant's *activity* that gives rise to his or her asserted liability—and whether that activity constitutes protected speech or petitioning." (*Id.* at p. 92.) Defendant does not have to "establish [his] actions are constitutionally protected under the First Amendment as a matter of law." (*Wilcox v. Superior Court* (1994) 27 Cal.App.4th 809, 820 [33 Cal.Rptr.2d 446], disapproved on another ground in *Equilon Enterprises v. Consumer Cause, Inc., supra*, 29 Cal.4th at p. 68, fn. 5.) The statute requires a defendant to make only a prima facie showing that plaintiffs' causes of action arise from an act in furtherance of defendant's constitutional rights of petition or free speech in connection with a public issue. (*Wilcox v. Superior Court, supra*, at p. 820.)

■ The prosecution of an unlawful detainer action indisputably is protected activity within the meaning of section 425.16. (See *Jarrow Formulas, Inc. v. LaMarche* (2003) 31 Cal.4th 728, 734–735 [3 Cal.Rptr.3d 636, 74 P.3d 737]; *Navellier, supra*, 29 Cal.4th at p. 90; *Chavez v. Mendoza* (2001) 94 Cal.App.4th 1083, 1087 [114 Cal.Rptr.2d 825].) "The constitutional right to petition . . . includes the basic act of filing litigation or otherwise seeking administrative action." (*Ludwig v. Superior Court* (1995) 37 Cal.App.4th 8, 19 [43 Cal.Rptr.2d 350]; see *California Transport v. Trucking Unlimited* (1972) 404 U.S. 508, 510 [30 L.Ed.2d 642, 92 S.Ct. 609] ["[t]he right of access to the courts is indeed but one aspect of the right to petition"].)

Plaintiffs' complaint, however, is not based on the filing of an unlawful detainer action but upon the service and refusal to rescind a notice to terminate plaintiffs' tenancy. In general, "[t]erminating a tenancy or removing a property from the rental market are not activities taken in furtherance of the

constitutional rights of petition or free speech." (*Marlin v. Aimco Venezia, LLC* (2007) 154 Cal.App.4th 154, 161 [64 Cal.Rptr.3d 488] (*Marlin*); see *Action Apartment Assn., Inc. v. City of Santa Monica* (2007) 41 Cal.4th 1232, 1250 [63 Cal.Rptr.3d 398, 163 P.3d 89] [a "notice of eviction is a communication regarding prospective litigation, and, as such, it is not necessarily part of a judicial proceeding"].) Nevertheless, if the termination notice is a legal prerequisite for bringing an unlawful detainer action, as it is in this case (§§ 1161, subd. 1, 1162; Civ. Code, § 1946; Rent Ord., § 37.9, subd. (a)(8)(i); see *Losornio v. Motta* (1998) 67 Cal.App.4th 110, 113 [78 Cal.Rptr.2d 799]), service of such a notice does constitute activity in furtherance of the constitutionally protected right to petition. (*Wilcox v. Superior Court, supra*, 27 Cal.App.4th at pp. 814, 821–822 [defendant's circulation of memorandum inviting court reporters to contribute to cost of proposed litigation was protected activity because it was done in furtherance of defendant's rights to petition and free speech in connection with public issue].)

Plaintiffs contend that *Marlin, supra*, 154 Cal.App.4th 154, which in turn relies on *Santa Monica Rent Control Bd. v. Pearl Street, LLC* (2003) 109 Cal.App.4th 1308 [135 Cal.Rptr.2d 903] (*Pearl Street*), demonstrates that Lam's activity is not protected under section 425.16. We disagree. In *Pearl Street*, the plaintiff rent control board sought a judicial determination of the maximum allowable rent that defendant landlords could charge for two apartments. (109 Cal.App.4th at p. 1318.) The Court of Appeal assumed defendants' filing of paperwork to restore the two apartments to the rental market was undertaken in furtherance of their right to petition or free speech, as that phrase is used in section 425.16. (*Pearl Street*, at p. 1318.) Nevertheless, the court concluded section 425.16 did not apply because defendants were not being sued for their conduct in exercising such constitutional rights. (*Pearl Street*, at p. 1318.) "Rather, *the suit is based on activity that preceded the filing of the papers. This suit is based on the Board's claim that defendants are charging an illegal rent for units A and C.*" (*Ibid.*, some italics added.) Similarly, in *Marlin*, the plaintiff tenants sued the defendant landlords seeking a judicial determination of the parties' rights under the Ellis Act (Gov. Code, § 7060 et seq.). (154 Cal.App.4th at pp. 157–158.) In concluding the defendants had failed to meet the first prong of the section 425.16 analysis, the Court of Appeal stated: "[I]n the present case defendants contend '[t]his lawsuit "arises from" [their] petitioning activity' because they 'utilized administrative channels by filing and serving Ellis Notice and otherwise satisfying statutory and municipal prerequisites to withdraw rental units . . . including the Marlins' apartment from the market.' But, as in *Pearl Street*, the Marlins' suit is not based on defendants' filing and serving of a notice required under the Ellis Act, it is based on the Marlins' contention 'defendants are not entitled to invoke or rely upon the Ellis Act to evict plaintiffs from their home.'" (*Marlin, supra*, at pp. 161–162.)

■ Unlike the situations in *Marlin* and *Pearl Street*, plaintiffs' causes of action do not challenge the validity of the Rent Ordinance or any activity by Lam that preceded the service of the termination notice. As noted by the trial court and supported by the record, "[t]he sole basis for liability" in each of plaintiffs' causes of action "was the service of a termination notice, pursuant to Rent Ordinance," and Lam's "refusal to rescind it after [p]laintiffs informed him that they constituted a protected household." Thus, the complaint indisputably arose from "activity protected under the anti-SLAPP statute." (*Navellier, supra*, 29 Cal.4th at p. 91, fn. 6.)[3]

■ Plaintiffs contend that in order to prevail on the first prong of the section 425.16 analysis, Lam was required to show that serving and refusing to rescind a termination notice are expressly referred to in the enumeration of acts in furtherance of a right to petition included in section 425.16, subdivision (e).[4] However, "the categories [of acts] enumerated there are not all-inclusive." (*Averill v. Superior Court* (1996) 42 Cal.App.4th 1170, 1175 [50 Cal.Rptr.2d 62].) The definitional categories are "preceded by the word 'includes,' " which "is ordinarily a term of enlargement rather than limitation." (*Ibid.*) Thus, "[t]he use of 'includes' implies that other acts which are not mentioned are also protected under the statute." (*Ibid.*) Lam's service and

---

[3] For the same reasons, we also find distinguishable the more recent decision in *Department of Fair Employment & Housing v. 1105 Alta Loma Road Apartments, LLC* (2007) 154 Cal.App.4th 1273 [65 Cal.Rptr.3d 469]. That decision, which held that an action against a landlord for disability discrimination in refusing to recognize a tenant's disability in removing an apartment building from the rental market and evicting the tenant, like *Marlin*, follows *Pearl Street*: "This suit might have been 'triggered by' [landlord's] filing, serving and processing the paperwork necessary to remove its residential units from the rental market in accordance with applicable laws. However, it is not true [landlord] was sued because it filed these notices in the official municipal and state statutory removal process, or because it communicated with [tenant] in connection with the process, or even because it filed the unlawful detainer actions against her. This suit is instead based on [plaintiff's] claims [landlord] discriminated against [tenant] by failing to accept the fact of, and accommodate, her disability by granting her an extension of her tenancy to one year. [Landlord] does not claim its alleged conduct of discriminating against [tenant] based on her disability was an act in furtherance of its petition or free speech rights." (*Id.* at pp. 1287–1288.)

[4] Section 425.16, subdivision (e) reads: "As used in this section, 'act in furtherance of a person's right of petition or free speech under the United States or California Constitution in connection with a public issue' includes: (1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law; (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law; (3) any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest; (4) or any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest."

refusal to rescind the termination notice constitute " ' "communications preparatory to or in anticipation of bringing an action or other official proceeding," ' [within] section 425.16," subdivision (e)(1). (*Flatley, supra*, 39 Cal.4th at p. 322, fn. 11, quoting *Briggs v. Eden Council for Hope & Opportunity* (1999) 19 Cal.4th 1106, 1115 [81 Cal.Rptr.2d 471, 969 P.2d 564].) Because Lam's petitioning conduct falls within "the bright-line 'official proceeding' test set out in clause[] (1) . . . of section 425.16, subdivision (e)" (*Briggs, supra*, at p. 1123), he was not required to "separately demonstrate" that his petitioning conduct was connected to "a 'public' issue" (*id.* at p. 1113). Nor was Lam required to "prove the suit was intended to chill" his constitutional rights, or "actually had that effect." (*Jarrow Formulas, Inc. v. LaMarche, supra*, 31 Cal.4th at p. 734.)

■ Lam argues that his conduct is protected by the litigation privilege (Civ. Code, § 47, subd. (b)), and plaintiffs devote much of their argument to disputing this contention. However, the issue is irrelevant to the determination of whether Lam has satisfied his burden under the first prong of the section 425.16 analysis. "To begin with, Civil Code section 47 expressly applies its privilege only to a 'publication or broadcast' made in specified circumstances, which include, under subdivision (b), judicial, legislative, and other official proceedings. . . . [S]ection 425.16 is not so limited; it extends to '*any* act . . . in furtherance of the . . . right [to] petition . . . .' " (*Ludwig v. Superior Court, supra*, 37 Cal.App.4th at p. 19.) More importantly, "[p]laintiffs' argument 'confuses the threshold question of whether the SLAPP statute [potentially] applies with the question whether [an opposing plaintiff] has established a probability of success on the merits.' " (*Navellier, supra*, 29 Cal.4th at p. 94.) To satisfy his burden under the first prong, Lam was not obligated to demonstrate that serving and refusing to rescind the termination notice were protected by the litigation privilege. As discussed more fully below, whether Lam's conduct is subject to protection under the litigation privilege is a factual inquiry. (*Action Apartment Assn., Inc. v. City of Santa Monica, supra*, 41 Cal.4th at p. 1251.) The first prong of the section 425.16 analysis is satisfied so long as the record does not show as a matter of law that Lam's conduct had "no 'connection or logical relation' to an action and [was] not made 'to achieve the objects' of any litigation." (*Fuhrman v. California Satellite Systems* (1986) 179 Cal.App.3d 408, 422, fn. 5 [225 Cal.Rptr. 140, 231 Cal.Rptr. 113], disapproved on another ground in *Silberg v. Anderson* (1990) 50 Cal.3d 205, 219 [266 Cal.Rptr. 638, 786 P.2d 365].) "Plaintiffs' argument also runs contrary to the legislative design. 'The Legislature did not intend that in order to invoke the special motion to strike the defendant must first establish [his] actions are constitutionally protected under the First Amendment as a matter of law. If this were the case then the [secondary] inquiry as to whether the plaintiff has established a probability of success would be superfluous.' " (*Navellier, supra*, 29 Cal.4th at pp. 94–95.)

■ Nor is there any merit to plaintiffs' suggestion that the exclusion from anti-SLAPP coverage for indisputably illegal conduct, recognized in *Flatley, supra,* 39 Cal.4th at page 320, applies here. "[C]onduct that would otherwise come within the scope of the anti-SLAPP statute does not lose its coverage . . . simply because it is *alleged* to have been unlawful or unethical." (*Kashian v. Harriman* (2002) 98 Cal.App.4th 892, 910–911 [120 Cal.Rptr.2d 576]; see *Chavez v. Mendoza, supra,* 94 Cal.App.4th at p. 1089.) An exception to the use of section 425.16 applies only if a "defendant concedes, or the evidence conclusively establishes, that the assertedly protected speech or petition activity was illegal as a matter of law." (*Flatley, supra,* 39 Cal.4th at p. 320.) The exception does not apply here. The trial court found, and we concur, that the evidence does not conclusively establish that Lam's conduct of serving and refusing to rescind the termination notice was illegal.

■ Finally, we are not persuaded by plaintiffs' argument that holding the first prong of the section 425.16 analysis to be satisfied in this case "would turn every dispute into petitioning conduct and every lawsuit arising from that dispute into a SLAPP." " '[T]he Legislature recognized that "all kinds of claims could achieve the objective of a SLAPP suit—to interfere with and burden the defendant's exercise of his or her rights." ' [Citation.] 'Considering the purpose of the [anti-SLAPP] provision, expressly stated, the nature or form of the action is not what is critical but rather that it is against a person who has exercised certain rights' [citation]." (*Navellier, supra,* 29 Cal.4th at pp. 92–93.) Plaintiffs' causes of action are indisputably based on conduct that was necessary for Lam to exercise his right to petition the court and he therefore is entitled to seek the protection of section 425.16.

## II. *The trial court must determine whether plaintiffs have made a prima facie showing of their right to prevail*

Because Lam has "met his threshold burden of demonstrating that plaintiffs' action is one arising from the type of . . . petitioning activity that is protected by the anti-SLAPP statute" (*Navellier, supra,* 29 Cal.4th at p. 95), whether his conduct was wrongful is an issue plaintiffs "must raise *and* support in the context of the discharge of [their secondary] burden to provide a prima facie showing of the merits of [their causes of action]" (*Paul for Council v. Hanyecz* (2001) 85 Cal.App.4th 1356, 1367 [102 Cal.Rptr.2d 864], disapproved on other grounds in *Equilon Enterprises v. Consumer Cause, Inc., supra,* 29 Cal.4th at p. 68, fn. 5). This burden can be met by showing Lam's purported " 'defenses are not applicable to the case as a matter of law *or* by a prima facie showing of facts which, if accepted by the trier of fact, would negate such defenses.' " (*Paul for Council v. Hanyecz, supra,* at p. 1367, quoting *Wilcox v. Superior Court, supra,* 27 Cal.App.4th at p. 824; see also *Flatley, supra,* 39 Cal.4th at p. 323 ["The litigation privilege is . . . relevant

to the second step in the anti-SLAPP analysis in that it may present a substantive defense a plaintiff must overcome to demonstrate a probability of prevailing"].)

Because the trial court concluded that Lam had not met his burden under the first prong of the section 425.16 analysis, it did not address the second prong. Although the parties have extensively briefed the issues pertaining to the probability of plaintiffs prevailing on their causes of action and the validity of Lam's defenses, we believe it more appropriate that the trial court address these issues in the first instance. The court did not expressly rule on plaintiffs' objections to evidence presented by Lam—noting in its written decision only that it considered "admissible evidence"—or on Lam's disputed request for judicial notice.[5] Whether plaintiffs have made a prima facie showing of their ability to overcome Lam's contention that service of the termination notice is protected by the litigation privilege in Civil Code section 47, subdivision (b) must be considered in light of the intervening decision in *Action Apartment Assn., Inc. v. City of Santa Monica, supra*, 41 Cal.4th 1232. This recent decision holds that "[a] prelitigation communication is privileged only when it relates to litigation that is contemplated in good faith and under serious consideration," a factual question that will require evaluation of plaintiffs' proffered evidence to determine whether they have made a prima facie showing of their ability to negate these factors. (*Id.* at pp. 1250–1251; cf. *Rohde v. Wolf* (2007) 154 Cal.App.4th 28 [64 Cal.Rptr.3d 348].) Lam also asserts the defense of res judicata and a constitutional attack on the validity of the Rent Ordinance (see fn. 4, *ante*), which will be unnecessary to consider if plaintiffs fail to make a prima facie showing of their ability to overcome his other defenses. (See *Palermo v. Stockton Theatres, Inc.* (1948) 32 Cal.2d 53, 65 [195 P.2d 1] [courts should not decide a constitutional question " 'unless such construction is absolutely necessary' "].) Under the circumstances, we deem it advisable to remand the matter to the trial court so that it may rule on the outstanding evidentiary and substantive matters in the first instance. (See *Hall v. Time Warner, Inc.* (2007) 153 Cal.App.4th 1337, 1347–1348 [63 Cal.Rptr.3d 798]; *DuPont Merck Pharmaceutical Co. v. Superior Court* (2000) 78 Cal.App.4th 562, 568 [92 Cal.Rptr.2d 755].)

---

[5] In support of his res judicata argument based on the contention that in previous litigation the court had declared the relative-move-in restrictions of the Rent Ordinance to be unconstitutional, Lam requested the court to take judicial notice of the decision and judgment in the previous lawsuit. Although the court commented on Lam's constitutional argument, it did not expressly rule on Lam's request for judicial notice or his res judicata defense.

## DISPOSITION

The order denying defendant's motion to strike is reversed and the matter is remanded to the trial court for further proceedings consistent with this opinion. Defendant shall recover his costs on appeal.

Siggins, J., and Horner, J.,[*] concurred.

---

[*]Judge of the Alameda Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.