[No. B187804. Second Dist., Div. Three. Feb. 26, 2007.]

TROY DYER, Plaintiff and Respondent, v.
HELEN CHILDRESS et al., Defendants and Appellants.

■■■■■■■■■■■■■■■■■■■■■■■■

■■■■■■■■■■■■■■■■■■■■■■■■

■■■■■■■■■■■■■■■■■■■■■■■■

COUNSEL

Leopold, Petrich & Smith, Louis P. Petrich and David Aronoff for Defendants and Appellants.

Kreindler & Kreindler, Gretchen M. Nelson, Stuart R. Fraenkel and Gabriel S. Barenfeld for Plaintiff and Respondent.

OPINION

KLEIN, P. J.—Defendants and appellants Helen Childress, Universal City Studios, Wind Down Films, Danny DeVito, Michael Shamberg, Stacey Sher and Ben Stiller, appeal the denial of a special motion to strike plaintiff and respondent Troy Dyer's lawsuit for defamation and false light invasion of privacy as a strategic lawsuit against public participation (SLAPP) under Code of Civil Procedure section 425.16.[1] We conclude the conduct at the heart of Dyer's lawsuit, the assertedly false portrayal of Dyer's persona in the movie Reality Bites, is not conduct in furtherance of defendants' exercise of their constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest. (§ 425.16, subd. (e)(4).) Consequently, we affirm the denial of defendants' special motion to strike.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Troy Dyer attended USC film school with defendant Helen Childress in the late 1980's. In 1990, Childress left school to work on a screenplay that became the movie Reality Bites (Jersey Films; Universal Pictures 1994), which was released in theaters in 1994. In the movie, Ethan Hawke portrays a rebellious slacker named Troy Dyer. The film addressed the issues facing Generation X in the 1990's. It was seen by more than 3 million

---

[1] Subsequent unspecified statutory references are to the Code of Civil Procedure.

people in theatres, it has been released on videocassette and DVD, and has been exhibited on television.

In 2005, following the release of a tenth anniversary edition DVD of the film, Dyer sued Childress and the other named defendants for defamation per se, defamation per quod and false light invasion of privacy based on the allegedly unflattering representation of Troy Dyer in the movie. The complaint notes the tenth anniversary edition DVD includes a running commentary on the film by Childress and the film's director, Ben Stiller, in which Childress states the characters in the film are based on her friends at USC film school. Dyer claimed his work as a financial consultant in Wisconsin has been affected by the negative association with the movie character.

Defendants filed a special motion to strike Dyer's complaint under the anti-SLAPP statute. (§ 425.16.)[2] In support of the motion, Childress declared Dyer gave her express permission to use his name for the fictional Troy Dyer. Childress asserted the use of Dyer's name was an inside joke because the fictional Troy Dyer was dissimilar to the plaintiff who was "straight laced, mature, [and] conservative . . . ." Childress stated that, after the theatrical release of the film, it was apparent to Childress that Dyer had seen the film but he never mentioned he had been upset or damaged by the use of his name.

In opposition to the motion, Dyer denied he ever gave Childress permission to use his name or likeness. Dyer saw the film within a month of its release in 1994 but did not like the way the fictional Troy Dyer was portrayed. Dyer consulted an attorney when inquiries from prospective clients as to whether he was the character named Troy Dyer began to affect his business but was advised the statute of limitations had run. Knowing he had no legal recourse, Dyer did not complain. However, after the release of the tenth anniversary edition DVD in 2004, Dyer again was besieged by inquires from potential clients as to whether he was the fictional Troy Dyer and this suit followed.

The trial court denied defendants' special motion to strike. Defendants appeal the denial of the motion. (§ 425.16, subd. (j).)

---

[2] Section 425.16 provides in relevant part: "A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States or California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim." (§ 425.16, subd. (b)(1).)

## CONTENTION

Defendants contend publication of the tenth anniversary edition DVD of Reality Bites constitutes "conduct in furtherance of the exercise of the constitutional right of . . . free speech in connection with . . . an issue of public interest" because the film raised issues of genuine widespread interest about the challenges facing Generation X in the early 1990's and thus falls within section 425.16, subdivision (e)(4).

## DISCUSSION

1. *General principles related to a special motion to strike.*

■ "A SLAPP suit—a strategic lawsuit against public participation—seeks to chill or punish a party's exercise of constitutional rights to free speech and to petition the government for redress of grievances. [Citation.] The Legislature enacted Code of Civil Procedure section 425.16—known as the anti-SLAPP statute—to provide a procedural remedy to dispose of lawsuits that are brought to chill the valid exercise of constitutional rights. [Citation.]" (*Rusheen v. Cohen* (2006) 37 Cal.4th 1048, 1055–1056 [39 Cal.Rptr.3d 516, 128 P.3d 713].) The purpose of the statute is to encourage participation in matters of public significance by preventing abuse of the judicial process. (§ 425.16, subd. (a).) The statute is to "be construed broadly." (§ 425.16, subd. (a).)

■ Section 425.16 describes four categories of conduct it addresses. The fourth category, in issue here, is "conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest." (§ 425.16, subd. (e)(4).)[3]

■ Analysis of a section 425.16 motion requires a two-step process. (*Navellier v. Sletten* (2002) 29 Cal.4th 82, 88 [124 Cal.Rptr.2d 530, 52 P.3d 703].) In the first step, the defendant must make a threshold showing that the challenged cause of action arises from protected activity. (*Rusheen v. Cohen, supra,* 37 Cal.4th at p. 1056; *Zamos v. Stroud* (2004) 32 Cal.4th 958, 965 [12 Cal.Rptr.3d 54, 87 P.3d 802]; *Equilon Enterprises v. Consumer Cause, Inc.* (2002) 29 Cal.4th 53, 67 [124 Cal.Rptr.2d 507, 52 P.3d 685].) If the defendant makes the required showing, the burden shifts to the plaintiff to

---

[3] The first two categories involve statements or writings made before, or in connection with, a "legislative, executive, or judicial body, or any other official proceeding . . . ." (§ 425.16, subd. (e)(1), (2).) The third category is "any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest." (§ 425.16, subd. (e)(3).)

demonstrate a probability of prevailing on the claim. (*Rusheen v. Cohen*, *supra*, at p. 1056; *Zamos v. Stroud*, *supra*, at p. 965; *Equilon Enterprises v. Consumer Cause, Inc., supra*, at p. 67.)

"Review of an order granting or denying a motion to strike under section 425.16 is de novo. [Citation.] We consider 'the pleadings, and supporting and opposing affidavits . . . upon which the liability or defense is based.' (§ 425.16, subd. (b)(2).) However, we neither 'weigh credibility [nor] compare the weight of the evidence. Rather, [we] accept as true the evidence favorable to the plaintiff [citation] and evaluate the defendant's evidence only to determine if it has defeated that submitted by the plaintiff as a matter of law.' [Citation.]" (*Soukup v. Law Offices of Herbert Hafif* (2006) 39 Cal.4th 260, 269, fn. 3 [46 Cal.Rptr.3d 638, 139 P.3d 30]; see *Wilbanks v. Wolk* (2004) 121 Cal.App.4th 883, 894 [17 Cal.Rptr.3d 497].)

█ In determining whether the anti-SLAPP statute applies in a given situation, we analyze whether the defendant's act underlying the plaintiff's cause of action *itself* was an act in furtherance of the right of petition or free speech. (*City of Cotati v. Cashman* (2002) 29 Cal.4th 69, 78 [124 Cal.Rptr.2d 519, 52 P.3d 695].) Accordingly, we focus on the specific nature of the challenged protected conduct, rather than generalities that might be abstracted from it. (*Consumer Justice Center v. Trimedica International, Inc.* (2003) 107 Cal.App.4th 595, 601 [132 Cal.Rptr.2d 191].) The "*principal thrust* or *gravamen*" of the claim determines whether section 425.16 applies. (*Martinez v. Metabolife Internat., Inc.* (2003) 113 Cal.App.4th 181, 188 [6 Cal.Rptr.3d 494].)

With these principles in mind, we turn to the issue presented herein.

2. *Defendants' arguments.*

In support of their contention Reality Bites is entitled to protection under the anti-SLAPP statute, defendants argue the film addresses broad topics of interest to the public, including the issues facing Generation X at the start of the 1990's. Thus, the film involved the right of free speech in connection with a public issue or an issue of public importance. Further, the special commentary on the film by Childress and Stiller that described the writing and creation of the film, distributed for the first time in the tenth anniversary edition DVD, itself was of widespread public interest.

Defendants reason Reality Bites is entitled to the same protection under the anti-SLAPP statute that has been afforded other media defendants such as the radio call-in shows in *Ingels v. Westwood One Broadcasting Services, Inc.* (2005) 129 Cal.App.4th 1050 [28 Cal.Rptr.3d 933] and *Seelig v. Infinity*

*Broadcasting Corp.* (2002) 97 Cal.App.4th 798, 807–808 [119 Cal.Rptr.2d 108], a documentary film on surfing in *Dora v. Frontline Video, Inc.* (1993) 15 Cal.App.4th 536, 544–546 [18 Cal.Rptr.2d 790], and an HBO documentary and Sports Illustrated article on molestation in youth sports in *M.G. v. Time Warner, Inc.* (2001) 89 Cal.App.4th 623 [107 Cal.Rptr.2d 504]. Defendants further assert the public interest requirement necessary to support a special motion to strike can be met even when the plaintiff is not a public figure if, as here, the underlying issue is of widespread interest to the public. (*Ibid.*; *Terry v. Davis Community Church* (2005) 131 Cal.App.4th 1534, 1548–1549 [33 Cal.Rptr.3d 145].)

Defendants conclude that because the broad topics addressed in Reality Bites qualify as matters of public interest, the trial court erroneously found defendants failed to make a sufficient showing under section 425.16 to shift the burden to Dyer to show a probability of prevailing on his claim.

### 3. *Resolution.*

■ Certainly, it is beyond dispute that movies involve free speech. (*Joseph Burstyn, Inc. v. Wilson* (1952) 343 U.S. 495, 500 [96 L.Ed. 1098, 72 S.Ct. 777]; *Guglielmi v. Spelling-Goldberg Productions* (1979) 25 Cal.3d 860, 868 [160 Cal.Rptr. 352, 603 P.2d 454]; *Polydoros v. Twentieth Century Fox Film Corp.* (1997) 67 Cal.App.4th 318, 323–324 [79 Cal.Rptr.2d 207].) However, not all speech in a movie is of public significance and therefore entitled to protection under the anti-SLAPP statute. The issue turns on the specific nature of the speech rather than generalities abstracted from it. (See *Consumer Justice Center v. Trimedica International, Inc., supra,* 107 Cal.App.4th at p. 601 [advertising claim promising breast enlargement was not about "herbal supplements in general" but "the specific properties and efficacy of a particular product" and therefore did not invoke a public issue or an issue of public interest].)

Here, the specific dispute concerns the asserted misuse of Dyer's persona. However, the representation of Troy Dyer as a rebellious slacker is not a matter of public interest and there is no discernable public interest in Dyer's persona. Although Reality Bites may address topics of widespread public interest, defendants are unable to draw any connection between those topics and Dyer's defamation and false light claims. Thus, defendants fail to show Dyer's complaint about the use of his persona goes beyond "the parochial particulars" of this case. (*Commonwealth Energy Corp. v. Investor Data Exchange, Inc.* (2003) 110 Cal.App.4th 26, 34 [1 Cal.Rptr.3d 390].) The fact that "a broad and amorphous public interest" can be connected to a specific dispute is not sufficient to meet the statutory requirements. (*Weinberg v. Feisel* (2003) 110 Cal.App.4th 1122, 1132 [2 Cal.Rptr.3d 385] [allegation of theft by

one token collector against another in an advertisement in a token collecting newsletter published by a 700-member token collector association was not a matter of public interest].)

a. *Reliance on* Ingels, Seelig *and* Dora *is misplaced.*

Defendants argue, essentially, that because they are media defendants and movies are entitled to free speech protection, Reality Bite*s* should be protected under the anti-SLAPP statute as were the media defendants in *Ingels, Seelig* and *Dora.* However, defendants' argument does not withstand scrutiny.

The plaintiffs in *Ingels* and *Seelig* voluntarily thrust themselves into a discussion of public topics. In *Ingels,* the plaintiff called into a live radio show to discuss the reluctance of the host to air his opinions because of his age. The plaintiff in *Seelig* participated in a television show, *Who Wants to Marry a Millionaire,* and thereby "subjected herself to inevitable scrutiny and potential ridicule by the public and media." (*Seelig v. Infinity Broadcasting Corp., supra,* 97 Cal.App.4th at p. 808.) Dyer, on the other hand, did not interject himself into any public debate.

In *Dora v. Frontline Video, Inc., supra,* 15 Cal.App.4th 536, the plaintiff was a legendary figure in surfing lore. Thus, an account of the biographical events of his life depicted a time and place in California history. (*Id.* at pp. 542–546.) Defendants fail to show Dyer similarly was a public figure in any defined subculture.

Thus, these cases do not assist defendants' position.

b. *Absent any public interest in Dyer's persona,* M.G. *and* Terry *are distinguishable.*

Defendants argue the public interest requirement can be met even when the plaintiff is not a public figure if the underlying issue is of widespread interest. (*M.G. v. Time Warner, Inc., supra,* 89 Cal.App.4th 623; *Terry v. Davis Community Church, supra,* 131 Cal.App.4th at pp. 1548–1549.) However, in each of these cases the plaintiffs were directly connected to a discussion of topics of widespread public interest.

In *M.G.,* a magazine story and a television program used a photograph of a Little League team to illustrate a story about adult coaches who sexually molest youths playing team sports. Eight players and two coaches depicted in the photograph sued, alleging invasion of privacy and infliction of emotional distress. Some of the eight players had been victims of sexual molestation

and others had not. In response to the defendants' special motion to strike, the plaintiffs claimed the narrow question of the identity of the molestation victims was not a matter of public interest. *M.G.* found that view of the case "too restrictive. The broad topic of the article and the program was not whether a particular child was molested but rather the general topic of child molestation in youth sports, an issue which . . . is significant and of public interest." (*M.G. v. Time Warner, Inc., supra,* 89 Cal.App.4th at p. 629.) Thus, the publication constituted an exercise of the defendants' "right of free speech concerning an issue of public interest in a public forum." (*Ibid.*)

In *Terry v. Davis Community Church, supra,* 131 Cal.App.4th 1534, the plaintiffs sued for libel, slander and infliction of emotional distress following a report by a church group and meetings thereon addressing allegations the plaintiffs, a church minister and his wife, engaged in an inappropriate sexual relationship with a minor member of the congregation. *Terry* held the communications in issue clearly warranted anti-SLAPP protection because they involved the important societal interest of protecting children from predators. (*Id.* at p. 1547.)

Thus, the plaintiffs in both *M.G.* and *Terry* directly were connected to an important issue of public significance, child molestation in youth sports or at church related functions. Although this connection was not of the plaintiffs' making, the issue under discussion was of such public importance that the defendants were entitled to anti-SLAPP protection. Dyer, on the other hand, was not part of any public discussion and was not connected to any such discussion. Thus, Dyer was not situated similarly to any of the plaintiffs in *M.G.* or *Terry*.

 c. *Extent of publication is not determinative.*

██ Defendants note section 425.16 has been applied in cases involving private communications to a single person. (*Ruiz v. Harbor View Community Assn.* (2005) 134 Cal.App.4th 1456, 1467–1470 [37 Cal.Rptr.3d 133].) It does not follow, however, that a more extensively published statement therefore is in the public interest. Regardless of the scope of publication, protection under the anti-SLAPP statute turns on whether the activity of the defendant involves the right of petition or free speech in connection with a public issue. (*Du Charme v. International Brotherhood of Electrical Workers* (2003) 110 Cal.App.4th 107, 119 [1 Cal.Rptr.3d 501].)

██ Similarly, cases involving disputes in the workplace do not involve matters of public interest as defined in section 425.16, even though the issue may involve free speech. (*Rivero v. American Federation of State, County and Municipal Employees, AFL-CIO* (2003) 105 Cal.App.4th 913, 924 [130

Cal.Rptr.2d 81] [disputes in the workplace implicate public policy but do not qualify as an issue of public interest].)

Based on the foregoing, we conclude the conduct underlying Dyer's complaint falls outside section 425.16.

> 4. *The reference to "motion pictures" in section 425.17 does not require a different result.*

■ In 2004, the Legislature sought to curtail abuse of the anti-SLAPP statute by enacting section 425.17. Broadly stated, subdivisions (b) and (c) of section 425.17 provide, respectively, that section 425.16 does not apply to any action brought on behalf of the general public or any action brought against a person primarily engaged in the business of selling or leasing goods or services.

Section 425.17, subdivision (d)(2), states exceptions to the limitations on the use of the anti-SLAPP statute set forth in subdivisions (b) and (c). Subdivision (d) excludes from the limitations: "Any action against any person or entity based upon the creation, dissemination, exhibition, advertisement, or other similar promotion of any dramatic, literary, musical, political, or artistic work, including, but not limited to, a motion picture or television program, or an article published in a newspaper or magazine of general circulation." (§ 425.17, subd. (d)(2).)

The Senate Analysis of section 425.17, subdivision (d), indicates it was intended to " 'exempt the news media and other media defendants (such as the motion picture industry) from the bill when the underlying act relates to news gathering and reporting to the public with respect to the news media or to activities involv[ed in] the creation or dissemination of any works of a motion picture or television studio. For claims arising from these activities, the current SLAPP motion would remain available to these defendants.' " (*Ingels v. Westwood One Broadcasting Services, Inc., supra,* 129 Cal.App.4th at pp. 1067–1068, quoting Sen. Com. on Judiciary, Analysis of Sen. Bill No. 515 (2003–2004 Reg. Sess.) as amended May 1, 2003.)[4]

Dyer has not claimed defendants' special motion to strike is barred by the limitations found in section 425.17. Nonetheless, defendants argue that by

---

[4] Section 425.17, subdivision (b) was relevant in *Ingels* because the plaintiff's claims included a cause of action for unlawful business practices brought " 'individually and on behalf of the general public . . . .' " (*Ingels v. Westwood One Broadcasting Services, Inc., supra,* 129 Cal.App.4th at p. 1067.) Dyer seeks only damages personal to himself.

expressly exempting motion pictures from the anti-SLAPP limitations imposed in section 425.17, subdivisions (b) and (c), the Legislature acknowledged that motion pictures are more deserving of protection than other forms of expression not enumerated.

■ Defendants' argument is not convincing. The exclusion of motion pictures from the exemptions to the limitations set forth in section 425.17, subdivisions (b) and (c), means only that anti-SLAPP motions remain available to defendants who are creators and distributors of motion pictures, such as the instant defendants. Thus, subdivision (d) merely retains the *status quo ante* enactment of the limitations.

■ The exception of section 425.17, subdivision (d)(2) *does not eliminate the need to show significant public interest in the conduct at the heart of the plaintiff's complaint* or expand the scope of the anti-SLAPP law to provide protection to motion picture defendants in every context. The explanation in the Senate Analysis that "the current SLAPP motion would remain available to these defendants," indicates the requirement of "conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest" remains extant. (§ 425.16, subd. (e)(4).)

Thus, we are unable to read into section 425.17, subdivision (d)(2), an enlargement of the protection afforded under the anti-SLAPP statute for motion picture defendants. Consequently, the reference to motion pictures in section 425.17, subdivision (d)(2), does not assist defendants.

### 5. *Conclusion.*

■ In sum, assuming the issues facing Generation X at the start of the 1990's are of significant interest to the public, Dyer, a financial consultant living in Wisconsin who happened to have gone to school with Childress, was not connected to these issues in any way. Thus, defendants failed to meet their initial burden of showing the activity underlying Dyer's lawsuit was in furtherance of defendants' constitutional right of free speech in connection with a public issue or an issue of public interest. (*City of Cotati v. Cashman, supra,* 29 Cal.4th at p. 78; § 425.16, subd. (e)(4).) Because defendants failed to meet their initial burden of proof, we need not address whether Dyer has demonstrated a probability of prevailing on the merits. (§ 425.16, subd. (b); see *Santa Monica Rent Control Bd. v. Pearl Street, LLC* (2003) 109 Cal.App.4th 1308, 1318–1319 [135 Cal.Rptr.2d 903].)

## DISPOSITION

The order denying defendants' special motion to strike is affirmed. Dyer is awarded costs on appeal.

Kitching, J., and Aldrich, J., concurred.

A petition for a rehearing was denied March 21, 2007, and appellants' petition for review by the Supreme Court was denied May 16, 2007, S151734.