Filed 5/16/14 Margolis v. Tran CA6

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SIXTH APPELLATE DISTRICT

| | |
|---|---|
| JOEL JEREMY MARGOLIS , Cross-complainant and Respondent, v. MONG YEN TRAN, Cross-defendant and Appellant. | H038739 (Santa Clara County Super. Ct. No. 1-10-CV180214) ORDER MODIFYING OPINION AND DENYING REHEARING [NO CHANGE IN JUDGMENT] |

THE COURT:

It is ordered that the opinion filed herein on April 25, 2014, be modified as follows:

1.     In the second full paragraph on page 13, the third sentence, beginning with "Nothing in Tran's or anyone else's account," and its accompanying citation are modified to read as follows:

> We see nothing in Tran's or anyone else's account of her comments that can be taken as "consumer protection warnings about potential pitfalls in seeking mortgage modifications." (Compare *Gilbert*, *supra*, 147 Cal.App.4th at pp. 19-20 [Web site created to " 'share my experience with plastic surgery' " and " 'inform and educate' " contained links to additional pages of information such as " 'Before and After Photos,' " " 'Selecting a Doctor,' " and " 'Red Flags' "].)

> This modification does not affect the judgment.

> The petition for rehearing is denied.

_____                _____
Date                                   Mihara, J.

                                       _____
                                       Elia, Acting P. J.

                                       _____
                                       Grover, J.

Filed 4/25/14  Margolis v. Tran CA6 (unmodified version)
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| JOEL JEREMY MARGOLIS,<br><br>    Cross-complainant and Respondent,<br><br>v.<br><br>MONG YEN TRAN,<br><br>    Cross-defendant and Appellant. | H038739<br>(Santa Clara County<br>Super. Ct. No. 1-10-CV180214) |

Appellant Mong Yen Tran appeals from the trial court's denial of her special motion to strike respondent Joel Jeremy Margolis's cross-complaint for slander per se and intentional interference with economic relations.  (Code Civ. Proc., § 425.16.)[1]  She contends that the trial court erred in denying the motion because (1) her statements were made in a public forum in connection with a public issue or an issue of public interest and (2) Margolis failed to establish a probability of success on the merits.  We affirm.

## I.  Background

Tran lived with her daughter Ngoc Giau Nguyen in San Jose.  Nguyen defaulted on her mortgage payments in late 2008 or early 2009.  She retained Margolis to help her

---

[1]     Subsequent statutory references are to the Code of Civil Procedure unless otherwise noted.

apply for a loan modification. The lender refused to modify the loan, and Nguyen lost her house to foreclosure. In August 2010, she sued Margolis for professional negligence, breach of fiduciary duty, unfair business practices, and intentional misrepresentation. Nguyen's complaint alleged that Margolis "fail[ed] to do anything about the loan modification or pending foreclosure," "allow[ed] a non-attorney to render legal advice" to her, "never performed any legal service whatsoever and completely failed to communicate with his client."

Margolis cross-complained against Nguyen and Does 1-100 for slander per se and intentional interference with economic relations. He alleged that cross-defendants made false statements about him during a call-in Vietnamese language radio broadcast about real estate topics in August 2009. Specifically, Margolis alleged that cross-defendants stated that he "caused [Nguyen] to lose her house; . . . did nothing to help [Nguyen] on her case; . . . never communicated with his clients; . . . [and] kept [Nguyen's] money after failing to work on her case." Margolis alleged that several of his clients came to his office "immediately" after the broadcast to express concern about the statements they heard on the radio. "Multiple prospective clients and current clients either dropped [Margolis's] services or decided not to retain [his] services as a result of the radio broadcast."

In September 2011, Margolis moved for summary judgment on Nguyen's complaint. The grounds for the motion were that her causes of action for professional negligence, breach of fiduciary duty, and unfair business practices were time-barred and that her cause of action for intentional misrepresentation had no merit because she could not establish one or more required elements.

In February 2012, Margolis filed a second amended cross-complaint that substituted Tran for the fictitiously named Doe 1. The amended cross-complaint alleged that Nguyen and Tran stated during the radio broadcast that Margolis "caused [Nguyen]

2

to lose her house; . . . did nothing to help [Nguyen] on her case; . . . never communicated with his clients; . . . [and] kept [Nguyen's] money after failing to work on her case."

In March 2012, the trial court granted summary judgment for Margolis on Nguyen's complaint. The court entered judgment in his favor.

Tran responded to Margolis's cross-complaint with a special motion to strike (§ 425.16).[2] She argued that her statements were protected under section 425.16, subdivision (e)(3) "because they were . . . made in a public forum, namely a public radio program, concerning a matter of public interest, namely informing consumers that retention of an attorney does not guarantee that a loan modification request will be granted, and of the problems and uncertainty of the loan modification process." Alternatively, Tran asserted that her statements were protected under section 425.16, subdivision (e)(4) because they were "matters of public interests, specifically, the results of her hiring an attorney to process a loan modification request." She also argued that there was no probability that Margolis would prevail on his cross-complaint. She submitted her own declaration and declarations from the broadcast's three cohosts in support of her motion. She also asked the court to take judicial notice of certain pleadings filed in the action and of a stipulation and order filed in the State Bar Court.

Tran admitted calling in to the radio program, which she said "covered matters related to real estate and the loan modification process." She "unequivocally" denied making "any of the statements alleged in the Second Amended Cross-Complaint." She declared, "I said I had sought the help of an attorney for a loan modification, and that the attorney's office had represented that the attorney could help me with the loan modification. I stated on the program that even after they failed to obtain the loan modification for us, the law office continued to tell me not to worry and that they can still

---

[2]     Section 425.16 motions are also referred to as anti-SLAPP motions. "SLAPP is an acronym for 'strategic lawsuit against public participation.'" (*Simpson Strong-Tie Co., Inc. v. Gore* (2010) 49 Cal.4th 12, 16, fn. 1.)

help me keep my house. The law office continued to make these promises even though I constantly advised them I had received default and foreclosure notices from the bank and we were in the process of being evicted. Despite their repeated assurances, we still ended up with our house being foreclosed." Tran said she did not identify herself during her "brief" call. She also declared that she "never identified [Margolis] as the attorney nor identified his law office . . . ." She asserted that Margolis's wife and office manager Tuyet Margolis[3] "confronted" her about her statements a few days after the radio broadcast. Tran said Tuyet told her that the person who prepared Nguyen's loan modification application heard the broadcast and told Tuyet about it. Tran said she informed Tuyet "that I spoke the truth about what had happened to our loan modification . . . ."

Each of the broadcast's three cohosts declared that the program discussed "real estate matters, including loan modifications." Each remembered a female caller who stated "in essence" that she "hired an attorney to help her process a loan modification request with the bank, but . . . the request was denied and her home was foreclosed." Each learned after the show that the caller was Tran. Each said that Tran "did not identify by name the attorney or the law office." Each explained that the program had a "general policy" of not allowing any caller to disclose the name of any attorney or business that the caller is or was involved with.

Margolis argued in opposition to Tran's motion that her statements were not protected by the anti-SLAPP law because "a private attorney's conduct with a client's private case is not a matter of public issue." He supported his opposition with declarations from a client and from Tuyet. He asked the court to take judicial notice of

---

[3]     Because Margolis and his wife share a surname, we refer to Tuyet by her given name, not out of disrespect but for convenience and clarity.

pleadings and documents filed in the action, including the order granting summary judgment in his favor.

Margolis's client Hoang Mai declared that he listened to a Vietnamese radio program called Selection Realty in the summer of 2009. Mai heard a call-in guest on the program "discuss . . . a law office in Milpitas that had a 'short Vietnamese woman' with a 'white American' lawyer." Mai "immediately knew that the call-in-guest was referring to [Margolis] and his office manager as his office is the only office in Milpitas, or in the surrounding areas, that fits the call-in-guest's description." The caller "said that the Law Office had caused the call-in-guest to lose her house." The caller also "said that the 'short Vietnamese woman' did nothing for the call-in-guest's file." Mai declared that he went to Margolis's office "immediately" after hearing the caller's remarks "because I knew the speaker was referring to that office."

Tuyet declared that Mai came to the firm's office and told her what he heard on the radio broadcast. Specifically, Mai reported "that he had heard a woman on the program say that our office had caused her to lose her house and that our office did no work on her file." Tuyet stated that "[a]s a result of the slanderous statements on the radio, we lost current and prospective clients and had to expend time and money to assure our current clients that the statements were untrue." She denied discussing the "slanderous statements . . . or any appearance made by [Tran] on any radio station" with either Tran or Nguyen.

Tuyet also declared that neither she "nor anyone else in our office" told Nguyen or Tran "that they could keep their property following [the] foreclosure sale." She explained that she offered to return Nguyen's $3,000 retainer to Tran "shortly" after Nguyen's loan modification was denied but "[a]t that time, [Tran] refused to accept the money."

The trial court granted the parties' requests for judicial notice. The court denied Tran's motion. The court found that Tran's statements did not involve a topic of

5

widespread public interest.  It explained that Tran had failed to provide the court "with any context in which to evaluate the public's potential interest in hearing about her issues with Margolis over a loan modification."  "[She] could have at least demonstrated the extent of the public's interest in this story prior to or at the time she made the statement" but she did not do so.  Nor did she "attempt to argue that her failed loan modification sparked some sort of public debate on loan modifications."  The court stated that "[i]f anything, it seems the public interest [in] this story was fueled simply by Tran's radio broadcast, but '[a] person cannot turn otherwise private information into a matter of public interest simply by communicating it to a large number of people.' ([*Rivero v. American Federation of State, County and Municipal Employees, AFL-CIO* (2003) 105 Cal.App.4th 913, 926 (*Rivero*)].)  Also, 'the focus of the speaker's conduct should be the public interest rather than a mere effort "to gather ammunition for another round of [private] controversy . . . ." [Citation.]' (*Weinberg v. Feisel* (2003) 110 Cal.App.4th 1122, 1132-1133 [(*Weinberg*)].)"  The court found it "difficult to conceive of Tran's statement on the radio as an attempt to protect or alert the public or otherwise contribute to a public debate; it seems she simply was commenting on the details of a private dispute and trying to publicly cast Margolis in a bad light."  "It was Tran's initial burden to make a prima facie showing that her statements arose from protected activity."  Since she failed to satisfy that burden, the burden never shifted to Margolis to establish a probability that he would prevail on his claims.  The court denied Tran's request for attorney's fees.  Tran filed a timely notice of appeal.

## II.  Discussion

Tran argues that the trial court erred in denying her anti-SLAPP motion because her statements during the radio broadcast were "protected under both [section 425.16] subdivision (e)(3) (statements made in a public forum in connection with a public

6

interest) and subdivision (e)(4) (statements in connection with a public issue or an issue of public interest.)" We disagree.

"A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the [cross-complainant] has established that there is a probability that the [cross-complainant] will prevail on the claim." (§ 425.16, subd. (b)(1).) "In making its determination, the court shall consider the pleadings, and supporting and opposing affidavits stating the facts on which the liability or the defense is based." (§ 425.16, subd. (b)(2).)

"'Section 425.16 posits . . . a two-part process for determining whether an action is a SLAPP. First, the court decides whether the [cross-defendant] has made a threshold showing that the challenged cause of action is one arising from protected activity. . . . If the court finds that such a showing has been made, it must then determine whether the [cross-complainant] has demonstrated a probability of prevailing on the claim.' [Citation.] 'Only a cause of action that satisfies *both* prongs of the anti-SLAPP statute— i.e., that arises from protected speech or petitioning *and* lacks even minimal merit—is a SLAPP, subject to being stricken under the statute.' [Citation.]" (*Soukup v. Law Offices of Herbert Halfif* (2006) 39 Cal.4th 260, 278-279 (*Soukup*).)

"Review of an order granting or denying a motion to strike under section 425.16 is de novo. [Citation.] We consider 'the pleadings, and supporting and opposing affidavits . . . upon which the liability or defense is based.' (§ 425.16, subd. (b)(2).) However, we neither 'weigh credibility [nor] compare the weight of the evidence. Rather, [we] accept as true the evidence favorable to the [cross-complainant] [citation] and evaluate the [cross-defendant's] evidence only to determine if it has defeated that submitted by the [cross-complainant] as a matter of law.' [Citation.]" (*Soukup*, *supra*, 39 Cal.4th at p. 269, fn. 3.)

7

Here, it is undisputed that Tran's statements about Margolis were "made in . . . a public forum . . . ." (§ 425.16, subd. (e)(3).) (See *Seelig v. Infinity Broadcasting Corp.* (2002) 97 Cal.App.4th 798, 807 (*Seelig*) [public forum requirement satisfied where "[t]he offending comments arose in the context of an on-air discussion between the talk-radio cohosts and their on-air producer . . . ."].) The issue is whether Tran's statements were made in connection with a "public issue" or "an issue of public interest" (§ 425.16, subds. (e)(3), (e)(4).)

The anti-SLAPP statute does not define "public issue" or "an issue of public interest." (§ 425.16, subds. (e)(3), (e)(4).) "[I]t is doubtful an all-encompassing definition could be provided." (*Weinberg*, *supra*, 110 Cal.App.4th at p. 1131.) In *Rivero*, the court reviewed a number of cases and concluded that the speech or conduct those cases addressed could be divided into three non-exclusive and sometimes overlapping categories. (*Rivero*, *supra*, 105 Cal.App.4th at p. 924.) The first category comprised "statements [that] concerned a person or entity in the public eye." (*Id*. at p. 924.) Cases in this category included *Sipple v. Foundation for Nat. Progress* (1999) 71 Cal.App.4th 226 (*Sipple*), which involved statements about alleged spousal abuse by "a top figure in national politics" who had devised media strategies for major presidential and gubernatorial candidates. (*Sipple*, at p. 238.) Other cases in this category include *Gilbert v. Sykes* (2007) 147 Cal.App.4th 13 (*Gilbert*) and *Seelig*. *Gilbert* involved allegedly defamatory statements about a " 'nationally recognized' " plastic surgeon. (*Gilbert*, at p. 18.) *Seelig* involved allegedly defamatory comments about a reality show contestant who "voluntarily subjected herself to inevitable scrutiny and potential ridicule by the public and the media" when she agreed to appear on the television show *Who Wants to Marry a Multimillionaire.* (*Seelig*, *supra*, 97 Cal.App.4th at pp. 807-808.)

The second category the *Rivero* court described comprised "conduct that could directly affect a large number of people beyond the direct participants . . . ." (*Rivero*, *supra*, 105 Cal.App.4th at p. 924.) Cases in this category included *Damon v. Ocean Hills*

8

*Journalism Club* (2000) 85 Cal.App.4th 468 (*Damon*) and *Dowling v. Zimmerman* (2001) 85 Cal.App.4th 1400 (*Dowling*). *Damon* involved allegedly defamatory statements made at board meetings and in the newsletter of a homeowners' association "concern[ing] the very manner in which this group of more than 3,000 individuals would be governed . . . ." (*Damon*, at p. 479.) *Dowling* involved alleged defamatory statements in a letter that advised the governing body of a large condominium complex about one owner's alleged campaign of harassment against his tenant, which created nuisance and safety issues that could adversely affect the other residents of the complex. (*Dowling*, at pp. 1406-1408, 1419.)

The third category the *Rivero* court described comprised statements on "a topic of widespread, public interest." (*Rivero*, *supra*, 105 Cal.App.4th at p. 924.) The *Rivero* court put *M.G. v. Time Warner, Inc.* (2001) 89 Cal.App.4th 623 (*M.G.*) in this category. (*Rivero*, at p. 924.) *M.G.* was an invasion of privacy action that arose out of a media company's use of a Little League team photograph to illustrate a *Sports Illustrated* cover story and an HBO broadcast on child molestation in youth sports. (*M.G.*, at pp. 626-627.) The court held that the article and the broadcast were in furtherance of the media company's right to free speech in connection with a public issue because the topic of both "was not whether a particular child was molested but rather the general topic of child molestation in youth sports, an issue which, like domestic violence, is significant and of public interest." (*M.G.*, at p. 629.) Other cases in this category include *Gilbert*, *Sipple*, and *Terry v. Davis Community Church* (2005) 131 Cal.App.4th 1534 (*Terry*). In *Gilbert*, it was undisputed that the risks and benefits of plastic surgery were topics of widespread public interest and discussion. (*Gilbert*, *supra*, 147 Cal.App.4th at p. 23.) In *Sipple*, the allegedly defamatory statements involved domestic violence, "an extremely important public issue in our society." (*Sipple*, *supra*, 71 Cal.App.4th at p. 238.) In *Terry*, the challenged communications involved "society's interest in protecting minors from

9

predators, particularly in places such as church programs that are supposed to be safe." (*Terry*, at p. 1547.) This was "clearly" a matter of public interest. (*Ibid.*)

The allegedly defamatory statements at issue in *Rivero* did not fit any of the above categories. Rivero was a janitorial supervisor at a public university. The university terminated his employment after three of the employees he supervised accused him of theft, extortion, and favoritism. (*Rivero*, *supra*, 105 Cal.App.4th at p. 916.) The union reported the termination in several of its publications. Rivero sued the union for libel and slander, and the union responded with a special motion to strike. (*Id.* at p. 917.) The trial court denied the motion. (*Ibid.*)

The Court of Appeal affirmed. (*Rivero*, *supra*, 105 Cal.App.4th at p. 918.) The court held that the union's statements were not made in connection with a public issue or an issue of public interest. (*Id.* at p. 924.) The challenged statements concerned the supervision of a staff of eight custodians by someone who had previously received no public attention or media coverage. (*Id.* at p. 924.) The only persons directly involved in and affected by the situation were Rivero and the eight custodians he supervised. (*Ibid.*) The court concluded that "Rivero's supervision of those eight individuals is hardly a matter of public interest." (*Ibid.*)

*Rivero* informs our analysis in this case. Tran's statements on the radio do not fit any of the categories the *Rivera* court identified. Her appeal does not challenge the trial court's determination that Margolis was not a person in the public eye. (*Rivero*, *supra*, 105 Cal.App.4th at p. 924.) She implicitly concedes that statements about Margolis did not involve "conduct that could directly affect a large number of people beyond the direct participants," namely, herself and Nguyen. (*Ibid.*) Her argument focuses on the third category, which involves statements on "a topic of widespread, public interest . . . ." (*Rivero*, *supra*, 105 Cal.App.4th at p. 924.)

Tran contends that her statements involved a matter of public interest because "an issue is one of 'public interest' within the meaning of the anti-SLAPP statute if it is '*one*

*in which the public takes an interest.*' [Citation.]" She claims she satisfied this test by submitting evidence that the program's cohosts recalled "an outpouring of callers to our radio program who [were] sympathetic to this woman's plight and who wanted to help her." We reject the argument. The cohosts' declarations do not advance Tran's position because "[a] person cannot turn otherwise private information into a matter of public interest simply by communicating it to a large number of people." (*Weinberg*, *supra*, 110 Cal.App.4th at p. 1133.) If that were the case, any private dispute mentioned by anyone on a radio or television program would automatically become a matter of public interest. (See *Rivero*, *supra*, 105 Cal.App.4th at p. 926 [rejecting a similar argument].) As the *Rivero* court pointed out, such a result would seriously undercut "the obvious goal of the Legislature that the public-issue requirement have a limiting effect." (*Rivero*, at p. 926.)

Tran contends that "where an individual's circumstances exemplify a broader problem or concern, it is the broader subject matter that constitutes the 'issue' for purposes of the anti-SLAPP analysis, and thus determines whether speech or conduct implicates a matter of public interest." She argues that the "overarching topic" of her comments was "the national foreclosure crisis and its human toll," both of which are matters of public interest.

There are two problems with Tran's argument. The first is that the record does not support her assertion that her statements addressed broad public interest issues. The cohosts of the broadcast declared that Tran "in essence" stated that she "hired an attorney to help her process a loan modification request with the bank, but . . . the request was denied and her home was foreclosed." Tran's own version of events was that she "said I had sought the help of an attorney for a loan modification" and that the attorney's office "represented that the attorney could help me with the loan modification." She also told the radio audience "that even after [the law firm] failed to obtain the loan modification for us, the law office continued to tell me not to worry and that they can still help me keep my house. The law office continued to make these promises even though I

11

constantly advised them I had received default and foreclosure notices from the bank and we were in the process of being evicted. Despite their repeated assurances, we still ended up with our house being foreclosed." These statements describe Tran's and Nguyen's private dealings with Margolis, not broad issues of widespread public interest.

The second problem with Tran's argument is that the cases she says are "directly on point" do not advance her position. The speech at issue in *Gilbert* appeared on a Web site created by a plastic surgery patient who was unhappy with the results of five facial surgeries. (*Gilbert*, *supra*, 147 Cal.App.4th at p. 19.) Her express purpose was " 'to share my experience' " and "to inform and educate because when I originally looked into cosmetic surgery on the Internet there was very little information from a patient[']s perspective . . . ." (*Ibid*.) The Web site contained advice, information, a contact page for readers to share their experiences, and the patient's "ruminations about plastic surgery in general, not all of it negative." (*Id*. at p. 24.)

The surgeon who claimed the Web site defamed him did not dispute that plastic surgery is a subject of widespread public interest and discussion. (*Gilbert*, *supra*, 147 Cal.App.4th at p. 23.) The court found that the Web site "contributed toward the public debate about plastic surgery in at least two ways: First, assertions that a prominent and well-respected plastic surgeon produced 'nightmare' results . . . contributes toward public discussion about the benefits and risks of plastic surgery in general . . . ." (*Ibid*.) Second, the Web site was not limited to the patient's interactions with the surgeon. (*Id*. at p. 24.) It was "[c]learly" not limited to attacking him "but contributed to the general debate over the pros and cons of undergoing cosmetic surgery." (*Ibid*.) This case is easily distinguished because Margolis is not a public figure and Tran's comments were limited to attacking him. Tran's reliance on *Gilbert* is misplaced.

Tran's reliance on *Terry* is similarly misplaced. The allegedly false statements at issue in that case were made in an investigative report of a church's governing body. (*Terry*, *supra*, 131 Cal.App.4th at p. 1539.) The report stated that the plaintiff church

12

youth group leaders had an inappropriate sexual relationship with a minor female church member. (*Id*. at p. 1538.) In concluding that the statements involved issues of public interest, the court noted that "the broad topic of the report and the meetings was the protection of children in church youth programs." (*Terry*, at p. 1548.) Among other things, the report recommended updating the church's sexual harassment policy, clarifying appropriate boundaries for interpersonal conduct, and involving members of the youth group and their parents in the selection of new youth leaders. (*Id*. at pp. 1547-1548.) The report was not limited to attacking the youth group leaders. By contrast, Tran's statements were limited to attacking Margolis. *Terry* is inapposite.

Tran argues that her statements involved issues of public interest because Margolis was publicly disciplined by the State Bar for failing to timely refund Nguyen's $3,000 retainer and for mishandling an unrelated client's bankruptcy matter. We disagree. Tran made her comments in August 2009. Margolis was disciplined by the State Bar in December 2011. The State Bar's action did not retroactively transform the comments Tran made more than two years before into an issue of widespread public interest.

Tran argues that her statements served a consumer protection purpose and thus concerned matters of public interest. We disagree. Nothing in Tran's or anyone else's account of her comments suggests that she intended to advise or warn others of Margolis's alleged incompetence. (Compare *Gilbert*, *supra*, 147 Cal.App.4th at p. 19 [Web site creator's express purpose was "to share my experience" and "to inform and educate . . . ."].) We agree with the trial court that it is "difficult to conceive of Tran's statement on the radio as an attempt to protect or alert the public or otherwise contribute to a public debate; it seems she simply was commenting on the details of a private dispute and trying to publicly cast Margolis in a bad light."

We conclude that the trial court did not err in denying Tran's special motion to strike Margolis's cross-complaint on the ground that her statements did not satisfy the "public issue" or "issue of public interest" criteria of section 425.16, subdivisions (e)(3)

13

or (e)(4).  Our conclusion makes it unnecessary for us to address whether Margolis demonstrated a probability of prevailing on his cross-complaint.  (*Dyer v. Childress* (2007) 147 Cal.App.4th 1273, 1284.)

## III.  Disposition

The order is affirmed.

_____
Mihara, J.

WE CONCUR:

_____
Elia, Acting P. J.

_____
Grover, J.