Filed 6/27/14  Deng v. Loh CA2/5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| HUI DUAN JENNY DENG,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>JIMMY LOH et al.,<br><br>    Defendants,<br><br>PETER HWU,<br><br>     Defendant and Appellant. | B249012<br><br>(Los Angeles County<br>Super. Ct. No. BC497876) |

APPEAL from an order of the Superior Court of the County of Los Angeles, Abraham Khan, Judge.  Affirmed.

Paul D. Cass for Defendant and Appellant Peter S. Hwu.

Gary Hollingsworth for Plaintiff and Respondent.

No appearance for Defendants.

# INTRODUCTION

Plaintiff and respondent Hui Duan Jenny Deng (Deng) sued Jimmy Loh (Loh); his company APC; Su Liu (Liu); and Peter S. Hwu (defendant and appellant) (collectively defendants) in connection with the termination of her employment by APC[1] and for defamation. Hwu filed a special motion to strike under Code of Civil Procedure section 425.16[2] (anti-SLAPP statute), which motion was denied. Hwu appeals from that denial.

We affirm the order of the trial court.

# BACKGROUND

After defendants dismissed their action against Deng for unfair competition, misappropriation of trade secrets, and conversion, on December 21, 2012, Deng filed an action against defendants for her termination from APC because of her medical condition; her request for medical leave; age discrimination; and harassment. She alleged violations of the California Fair Employment and Housing Act (Gov. Code, § 12900 et seq.) for discrimination and failure to prevent harassment. She also alleged that defendants had defamed her and violated the Labor Code section 1054 by falsely informing customers and others that she had been fired from APC because of theft or other illegal conduct and that she was retired, in the hospital, or incompetent at her job. She further alleged intentional infliction of emotional distress and other violations of the Labor Code. Prior to the filing of the Deng action, on October 8, 2012, Deng's lawyer wrote to "customers, associates and friends" of Deng informing them that defendants had dismissed their action and saying that Deng "is considering claims she has against Jimmy Loh and/or Su Liu for their conduct during the course of the lawsuit."

---

[1] Our reference to APC as Deng's employer includes Loh and Liu to the extent they were also her employers.

[2] All further statutory references are to the Code of Civil Procedure unless otherwise noted.

The basis for Deng's action against Hwu is a letter he wrote to Deng's customers and others on October 18, 2012, which states as follows: "Our law office represents Jimmy Loh and Su Liu, CPAs, APC. On April 26, 2012, we filed a lawsuit against Jenny Hui Duan Deng. On June 21, 2012, after discovering new facts to support additional causes of action (i.e., conversion and accounting), we filed a First Amended Complaint. In addition, our client filed a complaint with the Los Angeles County Sheriff's Department and it initiated an investigation of Ms. Deng's conduct during the course of her employment with our client. [¶] Since our client was concerned that, even if it won the lawsuit, it could not collect on any judgment entered by the court, on September 26, 2012, we dismissed the lawsuit, without prejudice. [¶] At this time, the Los Angeles County Sheriff's Department is still conducting its investigation, and our client will follow up and cooperate with the investigation." He enclosed a copy of the amended complaint, which he said had been dismissed, in which there are allegations against Deng for misappropriation of trade secrets, unfair competition, conversion of monies, and for an accounting. Hwu then sent a letter of October 29, 2012 to "retract" the statements in the October 18, 2012, letter but enclosing that letter.

Hwu is named as a defendant in only the fifth, sixth, and seventh causes of action in Deng's complaint. The letter of October 18, 2012 is the sole ground for the defamation cause of action—the sixth cause of action. The fifth cause of action for violation of Labor Code section 1054 for attempting by misrepresentation to prevent Deng from attempting to obtain employment against all defendants includes the following allegations: "53. On or about January 5, 2012, immediately after [Deng's] employment with [defendants] was terminated, and continuing to the present, defendants falsely informed numerous customers and others that [Deng] had been fired because [Deng] has stolen money or engaged in other illegal conduct while employed by [defendants]. Further, defendants also falsely informed customers and others that [Deng] had retired, was in the hospital, or was incompetent at her job. Defendants, by making these misrepresentation[s], attempted to prevent [Deng] from obtaining employment. [¶] 54. Further, beginning in or about January 5, 2012, and continuing to the present,

3

[defendants], either individually or collectively, have made statements by telephone to numerous persons, which statements are that any person who employed [Deng] would be subject to a lawsuit by defendants. Such statements were made in January 2012 to the owner of an accounting firm with whom [Deng] had sought employment. As a result of this verbal statement, and for no other reason, this employer declined to hire [Deng]. [Deng] is informed and believes that other potential employers have declined to hire [Deng] because of similar telephonic statements by defendants." The seventh cause of action is for intentional infliction of emotional distress by virtue of all the preceding allegations.

Hwu, the attorney for the other defendants and a defendant himself, filed a notice of special motion to strike (§ 425.16). In points and authorities submitted with the motion, he states the following: Deng was employed by APC, an accounting firm, as a staff accountant and manager; he was the attorney for defendants; when Deng left the employment she misappropriated APC's trade secrets by copying confidential files and information; she solicited APC's employees to leave APC and work with her; she solicited APC's clients; despite assurance she would stop soliciting clients, Deng continued to do so; and Deng embezzled money from APC. Hwu also states that Loh, Liu and APC filed an action against Deng and a criminal complaint against Deng with the Los Angeles County Sheriff's Department; Loh, Liu and APC dismissed the civil action against Deng without prejudice; Deng's attorney sent a letter to APC clients falsely charging that Loh and Liu were trying to stop Deng from doing business as a bookkeeper and tax preparer and dismissed the lawsuit against her, which assertions, other than the dismissal, had no justification; in response, Hwu sent a letter to the same clients explaining the "true factual and legal allegations" of the lawsuit and that a complaint had been filed with the Sheriff's Department. After a demand by Deng, Hwu sent a retraction letter and demanded that plaintiff's counsel also do so.

In a declaration in support of his motion to strike, Hwu attached the correspondence referred to in his points and authorities and stated that a detective

4

informed him that a criminal complaint, presumably against Deng, was still open and pending.

Hwu argued that his actions were in furtherance of his right of free speech and covered by the common interest privilege and by the litigation privilege. He also asserted that the statements were true and not motivated by malice. Thus, he claims that the action should be dismissed under the anti-SLAPP statute.

In opposition to the motion to strike, Deng filed a declaration that she was fired as a bookkeeper and tax preparer because of her medical condition; that Loh had sold his practice to Liu, who preferred younger people to do the work; when she sought new work, Loh and Liu threatened potential employers that they could be sued if they hired her; when clients called, Loh and Liu falsely stated that she was retired or was hospitalized so she no longer could work for the clients; Loh and Liu stated to clients they were suing her; Loh and Liu sued her, but then dismissed the suit; Loh, Liu and Hwu then sent letters to numerous persons falsely charging her with criminal acts and that they had referred the matter to the Los Angeles County Sheriff; and she has suffered financial loss and humiliation. Deng argued that the anti-SLAPP motion was not applicable and that the litigation privilege did not apply because the lawsuit had been dismissed.

Deng filed objections to the declaration of Hwu on the grounds, inter alia, of hearsay, lack of foundation and other grounds. Hwu filed a supplemental declaration attaching a document from the Los Angeles County District Attorney's office notifying Loh that criminal charges were filed against Deng. Hwu also filed objections to Deng's declaration based on, inter alia, lack of foundation. Hwu argued that a letter from Deng's attorney to customers said Deng might file a lawsuit against defendants and Hwu's letter to the clients was in anticipation of that lawsuit and therefore covered by the anti-SLAPP statute.

The trial court denied the motion on the ground that the anti-SLAPP statute did not apply because the alleged communications were not in anticipation of litigation, but instead addressed a dismissed and abandoned litigation. Thus, the trial court never

reached the evidentiary objections, nor the probability of success of Deng's claims.  Hwu filed a timely notice of appeal

## DISCUSSION

### A.     Appealability and Standard of Review

An order granting or denying a special motion to strike under section 425.16 is directly appealable.  (§§ 425.16, subd. (i), 904.1, subd. (a)(13); *Flatley v. Mauro* (2006) 39 Cal.4th 299, 325-326.)  We review de novo the trial court's order denying an anti-SLAPP motion.  (*Flatley v. Mauro, supra,* 39 Cal.4th at p. 325; *Christian Research Institute v. Alnor* (2007) 148 Cal.App.4th 71, 79].)  We do not weigh the evidence; rather, we accept as true evidence favorable to Deng, and evaluate evidence favorable to Hwu to determine whether it defeats Deng's claim as a matter of law.  (*Flatley v. Mauro, supra,* 39 Cal.4th at p. 326; *Soukup v. Law Offices of Herbert Hafif* (2006) 39 Cal.4th 260, 269, fn. 3; *Dyer v. Childress* (2007) 147 Cal.App.4th 1273, 1279.)

### B.     Legal Principles

"'A SLAPP suit—a strategic lawsuit against public participation—seeks to chill or punish a party's exercise of constitutional rights to free speech and to petition the government for redress of grievances.  [Citation.]  The Legislature enacted Code of Civil Procedure section 425.16—known as the anti-SLAPP statute—to provide a procedural remedy to dispose of lawsuits that are brought to chill the valid exercise of constitutional rights.  [Citation.]' (*Rusheen v. Cohen* (2006) 37 Cal.4th 1048, 1055–1056.)" (*Rohde v. Wolf* (2007) 154 Cal.App.4th 28, 34.)  "The goal [of section 425.16] is to eliminate meritless or retaliatory litigation at an early stage of the proceedings." (*Seelig v. Infinity Broadcasting Corp*. (2002) 97 Cal.App.4th 798, 806.)

Section 425.16 provides that "[a] cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue

shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim." (§ 425.16, subd. (b)(1).) "In considering the application of the anti-SLAPP statute, courts engage in a two-step process. "'First, the court decides whether the defendant has made a threshold showing that the challenged cause of action is one arising from protected activity. . . . If the court finds such a showing has been made, it then determines whether the plaintiff has demonstrated a probability of prevailing on the claim."' (*Taus v. Loftus* (2007) 40 Cal.4th 683, 712.) ""The defendant has the burden on the first issue, the threshold issue; the plaintiff has the burden on the second issue. [Citation.]' [Citation.]" [Citations.]'" (*Rohde v. Wolf, supra*, 154 Cal.App.4th at pp. 34-35.) "'Only a cause of action that satisfies *both* prongs of the anti-SLAPP statute—i.e., that arises from protected speech or petitioning *and* lacks even minimal merit—is a SLAPP, subject to being stricken under the statute.' [Citation.]" (*Governor Gray Davis Com. v. American Taxpayers Alliance* (2002) 102 Cal.App.4th 449, 456.)

"There is no question that 'a prelitigation statement falls within clause (1) or (2) of section 426.16, subdivision (e) if the statement "'concern[s] the subject of the dispute' and is made 'in anticipation of litigation "contemplated in good faith and under serious consideration[.]"'"'" (*Aguilar v. Goldstein* (2012) 207 Cal.App.4th 1152, 1162; see also *Neville v. Chudacoff* (2008) 160 Cal.App.4th 1255, 1268 (*Neville*). In *Neville,* an employer brought a contract and trade secrets action against a former employee. The employee cross-claimed that a letter sent by the employer's lawyer to customers before filing the lawsuit was defamatory. We held that it made no difference to the outcome that the letter had been sent before the employer brought the lawsuit against the former employee. According to *Neville,* "[t]his position reflects that 'courts have adopted "a fairly expansive view of what constitutes litigation-related activities within the scope of section 425.16." [Citation.]' [Citation.] Accordingly, although litigation may not have commenced, if a statement 'concern[s] the subject of the dispute' and is made 'in anticipation of litigation "contemplated in good faith and under serious consideration,"' [citations] then the statement may be petitioning activity protected by section 425.16."

7

(*Ibid*; see *People ex rel. Fire Ins. Exchange v. Anapol* (2012) 211 Cal.App.4th 809, 824; *Bailey v. Brewer* (2011) 197 Cal.App.4th 781, 789-790.)

"To demonstrate a probability of prevailing on the merits, the plaintiff must show that the complaint is legally sufficient and must present a prima facie showing of facts that, if believed by the trier of fact, would support judgment in the plaintiff's favor. [Citations.]  The plaintiff's showing of facts must consist of evidence that would be admissible at trial.  [Citation.]  The court cannot weight the evidence, but must determine whether the evidence is sufficient to support a judgment in the plaintiff's favor as a matter of law, as on a motion for summary judgment.  [Citations]." (*Hall v. Time Warner, Inc.* (2007) 153 Cal.App.4th 1337, 1346; see *College Hospital, Inc. v. Superior Court* (1994) 8 Cal.4th 704, 719-720, fn. 5; *1-800 Contacts, Inc. v. Steinberg* (2003) 107 Cal.App.4th 568, 585.)

### C.     Prelitigation Communication

The anti-SLAPP statute refers to pending litigation, but has been interpreted to apply to prelitigation statements. (*Neville, supra,* 160 Cal.App.4th at p. 1268.)  Thus, "communications preparatory to, or in anticipation of, being an action are within the protection of the anti-SLAPP statute." (*People ex rel. Fire Ins. Exchange v. Anapol, supra,* 211 Cal.App.4th at p. 824.)  To be covered by the anti-SLAPP statute, the prelitigation statement must concern the subject of the dispute and be made "in anticipation of litigation contemplated in good faith and under serious consideration." (*Ibid.*)  The litigation must be "genuinely contemplated" and not just "hollow threats." (*Ibid.*)  "[A]n offhand suggestion a given claim or dispute *might* result in a lawsuit would be insufficient to invoke the privilege [Civ. Code, § 47(b)]." (*Edwards v. Centex Real Estate Corp.* (1997) 53 Cal.App.4th 15, 35.)  The litigation privilege, although not "coextensive" with the anti-SLAPP statute, is used to construe the scope of the anti-SLAPP statute. (*Neville, supra,* 160 Cal.App.4th at p. 1263.)

As stated in *Edwards v. Centex Real Estate Corp., supra,* 53 Cal.App.4th at page 39, "In order for [a party] to be able to take advantage of the privilege by applying it to

their *own* communications, they must establish that at the time they made the subject communication, they *themselves* actually contemplated prospective litigation, seriously and in good faith." (See also *Action Apartment Assn., Inc. v. City of Santa Monica* (2007) 41 Cal.4th 1232, 1251 [a "prelitigation communication is privileged only when it relates to litigation that is contemplated in good faith and under serious consideration"].) Moreover, it has been said that the litigation privilege "attaches to prelitigation communications that are made at the point that 'imminent access to the courts is seriously proposed by a party in good faith for the purpose of resolving a dispute . . . .' [Citation.]" (*Olsen v. Harbison* (2010) 191 Cal.App.4th 325, 334-335.)

Because Hwu's October 18, 2012, letter, which is the basis of the defamation cause of action, was sent after the lawsuit by his clients had been dismissed, the letter could not have been in serious contemplation of a lawsuit by his clients. Indeed, there is nothing in the letter concerning the possibility of litigation or resolution of any claim.

Hwu asserts that his letter was in connection with contemplated litigation because it followed the October 8, 2012, letter from Deng's lawyer to others that Deng was "considering claims she has against [Loh and Liu] for their conduct during the course of the [dismissed] lawsuit." Hwu's letter does not reference the October 8, 2012, letter or mention any possible or threatened claims by Deng. Those "claims" do not suggest the serious contemplation of anticipated litigation in good faith and certainly not such litigation contemplated by Hwu's clients. Accordingly, Hwu's letter of October 18, 2012, is not covered by the anti-SLAPP statute.

### D. Common Interest

Hwu asserts that the communications are covered by the "common interest" privilege set forth in Civil Code section 47, subdivision (c). But that privilege is not specified in the anti-SLAPP statute, which covers matters of "public interest." (§ 425.16, subd. (e)(4).) Rather, the privilege is addressed in connection with the second prong of the anti-SLAPP statute—probability of prevailing. (See *Hailstone v. Martinez* (2008) 169 Cal.App.4th 728, 739.) As noted, the litigation privilege in Civil Code section 47 is

9

not "coextensive" with the anti-SLAPP statute even though it is "'an aid in construing the scope of section 425.16, subdivision [(e)(2)] with respect to the first step of the two-step anti-SLAPP inquiry . . . .' [Citations.]" (*Neville, supra,* 160 Cal.App.4th at p. 1263.)

Moreover, Hwu has not set forth sufficient facts at this stage that the recipients of the letter had a direct and immediate interest in the communication, such as a pecuniary or proprietary interest and not just general curiosity. (See *Brown v. Kelly Broadcasting Co.* (1989) 48 Cal.3d 711, 727 ["This privilege applied to a narrow range of private interests. The interest protected was private or pecuniary; the relationship between the parties was close, e.g., a family, business, or organizational interest; . . . the Legislature intended to codify the narrow common law privilege of common interest, . . ."]; *Kashian v. Harriman* (2002) 98 Cal.App.4th 892, 914; *Rancho La Costa, Inc. v. Superior Court* (1980) 106 Cal.App.3d 646, 664-665 [interest is "something other than mere general or idle curiosity"]; see also *Institute of Athletic Motivation v. University of Illinois* (1980) 114 Cal.App.3d 1, 11 [common interest privilege may not be "capable of precise or categorical definition"].) Hwu does not contend that any of the other statements fell within the public interest provision of the anti-SLAPP statute.

### E.    Labor Code Section 1054

With respect to the fifth cause of action under the Labor Code section 1054, the allegations concern the October 18, 2012, letter and allegations that the defendants attempted to prevent Deng from obtaining employment by various misrepresentations. As discussed, the letter is not covered by the anti-SLAPP statute. Neither are the alleged communications to prevent Deng from obtaining employment because these allegations in Deng's complaint concerning communications do not mention actual or anticipated litigation. In her declaration, Deng asserts that it was Loh and Liu who were the ones that contacted potential new employees—not Hwu.

10

**F.     Intentional Infliction of Emotional Distress**

Because the claim for intentional infliction of emotional distress is based solely on the allegations of the fifth and sixth causes of action, the anti-SLAPP statute does not cover those causes of action.

**G.     Conclusion**

Accordingly, Hwu has not established that any of the causes of action against him are covered by the first prong of the anti-SLAPP statute.  Thus, the trial court did not err in not granting Hwu's motion to strike

**DISPOSITION**

The order is affirmed.  Plaintiff shall recover her costs on appeal.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

MOSK, J.

I concur:

KRIEGLER, J

11

I concur in the judgment.  I would affirm based on the inadequacy of the record.  (*Maria P. v. Riles* (1987) 43 Cal.3d 1281, 1295; *In re Kathy P.* (1979) 25 Cal.3d 91, 102.)  There were evidentiary objections interposed and we have no idea how the trial court ruled nor what concessions were made by the parties.


TURNER, P. J.