Filed 3/22/23 Vopak Terminal Los Angeles v. Santich CA2/2

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| VOPAK TERMINAL LOS ANGELES, INC., | B316032 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. 21LBCV00283) |
| v. | |
| ANTHONY SANTICH, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Michael P. Vicencia, Judge. Affirmed.

Newmeyer & Dillion, Michael B. McClellan, Jason L. Morris, Jason Moberly Caruso and Jack M. Rubin for Defendant and Appellant.

Collier Walsh Nakazawa, Joseph A. Walsh II and Ellen E. McGlynn for Plaintiff and Respondent.

Defendant and appellant Anthony Santich appeals from the order denying his special motion to strike (anti-SLAPP)[1] the operative complaint, or portions of the complaint, under Code of Civil Procedure section 425.16.[2] In its complaint, plaintiff and respondent Vopak Terminal Los Angeles, Inc. (Vopak), alleged Santich, in order to exact revenge for the termination of his employment, disclosed confidential information to Daniel Xia (another former Vopak employee). Vopak alleges Santich then arranged for Xia to meet with public officials at the Port of Los Angeles to interfere with Vopak's lease agreement. It is also alleged that Santich attempted to use the NAACP to harm Vopak by making false statements about its hiring and diversity practices to the vice president of the local chapter.

Santich sought to have these claims struck on the ground that his conduct was protected under section 425.16. He argued his communications concerned public issues surrounding the use of public property and goals for hiring and diversity in employment. He did not meet his burden, however, because he failed to show that his conduct contributed to the public discussion on the public issues he identified.

We affirm the order denying Santich's motion.

---

[1] SLAPP stands for strategic lawsuit against public participation.

[2] All further statutory references are to the Code of Civil Procedure unless otherwise indicated.

# BACKGROUND

## Allegations in the complaint

Vopak is engaged in storing, blending, and transferring liquid products, including petroleum, chemicals, and biofuels. It operates a marine terminal and storage facility near berths 186–190 within the Port of Los Angeles. During the relevant time period Vopak was in the process of negotiating a 30-year extension of Vopak's lease at the Port.

Vopak employed Santich from January 2, 2008, until September 25, 2020. During his employment, Santich agreed to Vopak's employee confidentiality policy, which included:

> "Upon becoming an employee of Vopak, an individual assumes the obligations not to disclose Vopak's Confidential Information to individuals, businesses, governmental entities or any other parties outside of Vopak and not to permit Vopak's Confidential Information to be used by any such individuals, businesses, governmental entities or parties or by Employee for his or her own purposes."

Confidential information was defined to mean "all commercially sensitive, proprietary or otherwise confidential information of Vopak, including, but not limited to, Vopak's trade secrets that have been developed or used or that will be developed and that cannot be readily obtained by third parties from outside sources."

Vopak terminated Santich's employment, effective September 25, 2020. Vopak and Santich entered into a confidential separation agreement and general release that included an agreement not to disparage or criticize Vopak's management, services, products, or practices and not to damage its reputation.

After his employment was terminated, Santich began expressing his frustration with Vopak and its management to Xia. Santich then asked and encouraged Xia to interfere with lease negotiations between Vopak and the Port of Los Angeles. Santich promised to employ Xia in a business they would form if their concerted efforts to oust Vopak from the terminal were successful. Santich advised Xia that he could not be involved due to provisions in his separation agreement with Vopak.

Santich then arranged for Xia to meet with Jacob Haik, deputy chief of staff for Los Angeles City Councilman, Joe Buscaino; harbor commissioner for the Port of Los Angeles, Ed Renwick; and Gene Seroka, executive director for the Port of Los Angeles. Santich discussed negotiating points with Xia before the meetings and instructed Xia to tell the officials that they could extract an additional $75 to $100 million from the lease of Vopak's terminals if they sought an open bid instead of negotiating through Vopak.

Vopak alleged that these statements and actions caused the disclosure of Vopak's confidential information for Santich's benefit. This included trade secrets, lease negotiation strategy, customer information, pricing techniques, financial data, and Vopak's valuation of wharfage fees.

Santich also provided Xia with contact information for Scott McGowan and Idaho Asphalt Supply, Inc., in order to encourage them to submit a bid or proposal if the Port of Los Angeles sought an open bid on Vopak's terminal at the Port of Los Angeles.

In addition to his discussions with Xia, Santich discussed Vopak's hiring and diversity practices with the San

4

Pedro/Wilmington branch of the NAACP. Santich allegedly did this to disparage Vopak's reputation in the community.

Vopak sent a cease-and-desist letter on March 23, 2021, to Xia. At Santich's request, Xia deleted his records and correspondence. Santich also constructed a false narrative and timeline with Xia who was instructed to keep Santich's name out of any discussions with Vopak.

On May 24, 2021, Vopak filed its complaint against Santich alleging six causes of action.

Vopak incorporated all of its general allegations into each of its causes of action, including the allegations that Santich engaged in speech directed to public officials and the NAACP branch.

In its first cause of action Vopak alleged Santich breached the employee confidentiality policy by aiding the disclosure of Vopak's confidential information to port officials and Haik "as detailed in paragraphs 5 - 75, above." Vopak added that copies of its employee handbook and Santich's signature acknowledging receipt of the employee confidentiality policy are attached as exhibits A and B to the complaint. The exhibits were not attached, however.

In its second cause of action, Vopak alleged Santich breached the separation agreement by aiding the disclosure of Vopak's confidential information to port officials and Haik "as detailed in paragraphs 5 - 75, above." Vopak alleged that a copy of the separation agreement is attached as exhibit C to the complaint, but no exhibit was attached.

In its third cause of action, Vopak alleged Santich's individual or concerted actions with the Port of Los Angeles harbor commissioners and city council representatives have made

Vopak's existing contractual performance more difficult and expensive.

In its fourth cause of action, Vopak alleged that Santich interfered with the negotiations between Vopak and the Port of Los Angeles concerning a lease agreement. Vopak alleged that Santich "aided and abetted the misrepresentation of Vopak's financial position and related information, Vopak's terminal regulatory requirements and compliance, the value of the Vopak terminal, the process of the leasehold negotiations and Vopak's strategies to the staff of the Port of Los Angeles, Port Officials and members of the City Council, for the purposes of convincing the Port of Los Angeles to remove, evict or otherwise force Vopak out from the terminal lease for the express commercial benefit of Defendant and other financially interested 'industry players.'" Vopak also alleged that Santich "disparaged Vopak such that it caused or contributed to the local chapter of NAACP further disparaging Vopak's reputation in the community with regard to its hiring and diversity practices."

In its fifth cause of action, Vopak alleged that Santich misappropriated its trade secrets when he acted alone or in concert with Xia and disclosed or caused to be disclosed Vopak's trade secrets.

In the sixth cause of action, Vopak alleged Santich conspired with Xia to disclose Vopak's confidential information and that Santich knew Xia planned to misrepresent Vopak's information and negotiating strategy to the Port of Los Angeles and city council representatives.

The complaint includes a signed verification from Vopak's general manager, Michael LaCavera.

**Anti-SLAPP motion**

Santich filed an anti-SLAPP motion to strike the entire complaint, each cause of action, or the allegations in paragraphs 69 and 97 concerning his statements to the NAACP. Santich argued that Vopak's claims arose from statements made in connection with public issues of port income at the Port of Los Angeles and the hiring and diversity practices at Vopak. He argued that Vopak's damages in each cause of action arise from the alleged effect his statements had on Vopak's lease negotiations with the Port of Los Angeles, i.e., his statements encouraged the Port of Los Angeles to extract more income from leases at the port. He asserted that he had met his burden under section 425.16 because Vopak's claims arose from conduct protected under section 425.16, subdivision (e)(4).

The anti-SLAPP motion was supported by the declaration of Attorney Michael McClellan, which provided a foundation for the printout of the "About" page of the Port of Los Angeles Web site. This showed the importance of the Port of Los Angeles to the community. No other facts were included.

Vopak opposed the motion, arguing that none of the claims in its six causes of actions arose from protected activity. Instead, they arose from Santich breaching contracts, misappropriating trade secrets, and interfering with business conduct.

Vopak also asserted that Santich offered no evidence that his claims were done to advance any public issue. On the contrary, it argued that Santich conspired with private citizens to further his own self-interest and to punish his former employer for terminating his employment.

Vopak then offered its evidence to show it had met its burden of establishing a reasonable probability of prevailing on

7

the merits. Vopak referred to its verified pleadings and the declarations supporting its opposition, including the declaration of its attorney, Joseph Walsh. Walsh provided facts as foundation for the two declarations of Xia that were attached as exhibits.

In these two declarations, Xia described in detail his communications with Santich, including Santich's frustration with Vopak and its decision to terminate his employment, Santich's request for assistance in convincing public officials that it was in the best interest of the city and the Port of Los Angeles to have an open bid process on the lease of terminals used by Vopak, and Santich's activities to assist Xia in this endeavor. Xia stated that Santich advised him that he and Santich could assist a bidder on the terminals and be hired as consultants.

Xia also mentioned that Santich expressly told him that Santich had requested the local chapter of the NAACP to complain about Vopak's hiring practices to the Port of Los Angeles.

Xia added that, after he received the cease-and-desist letter from Vopak's attorneys, Santich advised him to delete all e-mails and text messages related to his communications with Santich and the port officials. He also stated that they discussed how to respond to the cease-and-desist letter and that Santich asked Xia to keep Santich's involvement confidential.

In his two declarations Xia provided detailed information on how he learned confidential information about Vopak and how he disclosed or used this confidential information in his meetings with port officials. Xia also discussed how his statements to the port officials were incomplete and misleading, e.g., he did not disclose that Vopak owned the assets at the wharves and his claim that the Port of Los Angeles could extract an additional $75

8

to $125 million was an embellishment made without any true calculation.

In addition to the declarations of Walsh and Xia, Vopak provided the declaration of LaCavera, the managing director of Vopak. LaCavera established that the statements made at Santich's urging were untrue and disclosed Vopak's confidential information, e.g., its financial modeling and revenue projections.

In his reply, Santich provided additional evidence and made written objections to Vopak's evidence. Santich argued that section 425.16 should be construed broadly and that his conduct of encouraging another to communicate with port officials was protected. He also argued that Vopak had not met its burden, because it had failed to provide any admissible evidence. He claimed the declarations of Xia were hearsay because they were attached as exhibits to the Walsh declaration.

On August 12, 2021, Santich filed additional papers five days before the August 17, 2021 hearing, to request judicial notice of video recordings of Port of Los Angeles public meetings. Vopak filed an objection the next day.

The August 17, 2021 hearing was continued to September 14, 2021, and Vopak was allowed to file a sur-reply.

Vopak filed its sur-reply on September 3, 2021, addressing whether the NAACP claim should be stricken. A declaration from Hugo Teste, general counsel for Vopak, that included e-mails showing Santich had commended Vopak on its diversity programs was included. Also provided was the declaration of Kyle Zandy, director of human resources for Vopak, who described Vopak's hiring practices and noted Santich had not raised any concerns with him about Vopak's hiring practices or minority representation. There was an additional declaration from

LaCavera containing facts showing Vopak had safe and fair hiring practices and that Santich never reported any concerns about Vopak's management or hiring practices.

The hearing on the motion was held on September 14, 2021. The trial court sustained three of Santich's objections to Vopak's evidence and overruled the other 92. It overruled Vopak's objections to Santich's reply and declined to take judicial notice of the public meetings. Santich's motion was then denied in its entirety.

Santich filed a timely notice of appeal on September 30, 2021.

## DISCUSSION

### I. Applicable law and standard of review

A special motion to strike under section 425.16, also known as the anti-SLAPP statute, allows a defendant to seek early dismissal of a lawsuit involving a "cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue." (§ 425.16, subd. (b)(1).)

Actions subject to dismissal under section 425.16 include those based on "(1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law, (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law, (3) any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public

interest, or (4) any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest." (§ 425.16, subd. (e).)

"A SLAPP is subject to a special motion to strike 'unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim.' (§ 425.16, subd. (b)(1).) Thus, evaluation of an anti-SLAPP motion requires a two-step process in the trial court. 'First, the court decides whether the defendant has made a threshold showing that the challenged cause of action is one "arising from" protected activity. (§ 425.16, subd. (b)(1).) If the court finds such a showing has been made, it then must consider whether the plaintiff has demonstrated a probability of prevailing on the claim.'" (*Nygård, Inc. v. Uusi–Kerttula* (2008) 159 Cal.App.4th 1027, 1035 (*Nygård*).) "Only a cause of action that satisfies *both* prongs of the anti-SLAPP statute—i.e., that arises from protected speech or petitioning *and* lacks even minimal merit—is a SLAPP, subject to being stricken under the statute." (*Navellier v. Sletten* (2002) 29 Cal.4th 82, 89.)

"'Review of an order granting or denying a motion to strike under section 425.16 is de novo. [Citation.] We consider "the pleadings, and supporting and opposing affidavits . . . upon which the liability or defense is based." (§ 425.16, subd. (b)(2).) However, we neither "weigh credibility [nor] compare the weight of the evidence. Rather, [we] accept as true the evidence favorable to the plaintiff [citation] and evaluate the defendant's evidence only to determine if it has defeated that submitted by the plaintiff as a matter of law."'" (*Nygård, supra*, 159 Cal.App.4th at p. 1036.)

## II.  Santich fails to show his conduct is protected under section 425.16

The threshold question in evaluating Santich's anti-SLAPP motion is whether Vopak's complaint arises from protected activity. (*Nygård, supra*, 159 Cal.App.4th at p. 1035.) In making this determination, the trial court may consider the pleadings and supporting and opposing affidavits setting forth the facts upon which the liability or defense is based. (*Equilon Enterprises v. Consumer Cause, Inc.* (2002) 29 Cal.4th 53, 67.)

Santich, therefore, had the initial burden of showing that the causes of action against him arose from protected activity. (§ 425.16, subd. (e).) He argues that Vopak's claims arise from the alleged damages caused by two general categories of conduct: (1) statements to Xia for Xia to convey to public officials and the port officials regarding how the port could extract additional rent from Vopak if the port would seek an open bid instead of negotiating with Vopak and (2) statements to the vice president of the San Pedro/Wilmington branch of the NAACP regarding Vopak's hiring and diversity practices. He asserts both these categories of statements are protected under section 425.16, subdivision (e)(4), because they are statements "in connection with a public issue or an issue of public interest."[3]

---

[3]  At oral argument, counsel for appellant argued that Santich's conduct was protected under section 425.16, subdivision (e)(2) on the theory that the discussions with public officials were written or oral statements or writings made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law. This is unsuccessful for two reasons. First, it was not raised in the papers filed with the trial court. Because this theory is

The inquiry under this catchall provision calls for a two-part analysis rooted in the statute's purpose and internal logic. (*FilmOn.com Inc. v. DoubleVerify Inc.* (2019) 7 Cal.5th 133, 149 (*FilmOn*).) "First, we ask what 'public issue or . . . issue of public interest' the speech in question implicates—a question we answer by looking to the content of the speech. (§ 425.16, subd. (e)(4).) Second, we ask what functional relationship exists between the speech and the public conversation about some matter of public interest. It is at the latter stage that context proves useful." (*Id.* at pp. 149-150; see *Geiser v. Kuhns* (2022) 13 Cal.5th 1238, 1243 [describing *FilmOn*'s two-part test as: "first, we ask what public issue or issues the challenged activity implicates, and second, we ask whether the challenged activity contributes to public discussion of any such issue"].)

The catchall provision demands "'some degree of closeness'" between the challenged statements and the asserted public interest. (*FilmOn, supra*, 7 Cal.5th at p. 150.) So even if the Port of Los Angeles's ability to extract additional income from the port

_____

presented for the first time on appeal, we will not consider it. (*Mattco Forge, Inc. v. Arthur Young & Co.* (1997) 52 Cal.App.4th 820, 847 [permitting a party to adopt a new theory on appeal is not only "unfair to the trial court, but manifestly unjust to the opposing litigant"].) Second, no evidence was offered to show that the port was considering or reviewing any change to how it leased the port facilities. Santich's conduct was intended to persuade the port to do an open bid process rather than negotiate the existing lease with Vopak. Since Santich did not show that the port was considering or reviewing an open bid process, he did not show his conduct was protected under 425.16, subdivision (e)(2). Thus, even if we consider this new theory, it does not meet Santich's burden on prong one.

13

or Vopak's hiring and diversity practices are in fact issues of public interest, "it is not enough that the statement refer to a subject of widespread public interest; the statement must in some manner itself contribute to the public debate." (*Wilbanks v. Wolk* (2004) 121 Cal.App.4th 883, 898; see *Dyer v. Childress* (2007) 147 Cal.App.4th 1273, 1280 ["[t]he fact that 'a broad and amorphous public interest' can be connected to a specific dispute" is not enough].)

What it means to "'contribute to the public debate'" depends on the state of public discourse at a given time and the topic of contention. (*FilmOn, supra*, 7 Cal.5th at pp. 150-151.) We are not concerned with the social utility of the speech at issue, or the degree to which it propelled the conversation in any particular direction; rather, we examine whether a defendant—through public or private speech or conduct—participated in, or furthered, the discourse that makes an issue one of public interest. (*Ibid*.) Defendants cannot claim their conduct involves a public interest merely by defining their narrow dispute through its slight reference to the broader public issue. (*Ibid*.)

Santich discussed *FilmOn* in his reply brief, but not the two-part analysis required to meet his burden under section 425.16. (*FilmOn, supra*, 7 Cal.5th at pp. 150-151.) In *FilmOn*, the defendant provided reports on Web sites to its clients. The Supreme Court applied the two-part analysis by finding that the reports contained information relevant to public concern over adult content and copyright on the Internet. (*Id*. at p. 152.) It then found that the defendant had not shown these reports contributed to the public debate on these issues because the information in its reports did not enter the public sphere and the parties never intended them to do so. (*Id*. at p. 153.)

14

Santich addressed only the first part of *FilmOn*'s test when he argued that his conduct implicated public issues. He did not address the second part and thus, did not meet his burden under section 425.16 with allegations or evidence showing that his conduct contributed to the public debate on the public issues he identified, i.e., the public debate on the lease of port facilities or the hiring and diversity practices of Vopak.

When resolving Santich's appeal, it is critical to apply our Supreme Court's guidance to consider "whether a statement— including the identity of its speaker, for example, or the audience sought—contributes to or furthers the public conversation on an issue of public interest. It is by carefully observing this wedding of content and context that we can discern if conduct is 'in furtherance of' free speech 'in connection with' a public issue or issue of public interest." (*FilmOn, supra*, 7 Cal.5th at p. 154.)

**A.** ***Santich's conduct implicates public issues***

Santich's conduct includes attempts, using Xia as his spokesperson, to persuade port officials to extract additional rent from Vopak and statements to the vice president of the NAACP branch at San Pedro/Wilmington regarding Vopak's hiring and diversity practices. Both implicate public issues.

Santich's efforts to increase Vopak's rent by persuading the port official to use an open bid process implicate the public interest in avoiding favoritism and maximizing income from public lands. (See, e.g., *City of Inglewood-L.A. County Civic Center Auth. v. Superior Court* (1972) 7 Cal.3d 861, 866 [finding that competitive bidding prevents favoritism, fraud, and corruption when awarding public construction contracts].)

Santich's statements to the vice president of the NAACP branch also implicate a public interest, which is requiring fair

15

employment practices in a tenant of a public entity. (See e.g., *Connick v. Myers* (1983) 461 U.S. 138, 148, fn. 8 [finding racial discrimination is a matter inherently of public concern].) Santich's reply includes facts showing that the vice president of the San Pedro/Wilmington branch of the NAACP had concerns over race-based discrimination in the hiring of workers at the Port of Los Angeles.

**B.**    ***Santich's conduct did not contribute to public discussion of these issues***

Although Santich showed that his conduct implicated public issues, he did not make the threshold showing that a "functional relationship" exists between his conduct and the "public conversation" on the issues of avoiding favoritism, maximizing income, and fair employment practices at the port. In determining whether a defendant has sustained its initial burden, the court considers the pleadings, declarations, and matters that may be judicially noticed. (§ 425.16, subd. (b)(1).)

A defendant's supporting evidence must be filed with its moving papers and evidence presented for the first time in reply papers may be disregarded. (*Jay v. Mahaffey* (2013) 218 Cal.App.4th 1522, 1536.) Here, the trial court exercised its discretion and considered the evidence in Santich's reply, and continued the hearing to allow Vopak to submit a sur-reply to avoid prejudice. Neither the pleadings nor his evidence showed Santich contributing to the public debate on the identified issues.

Vopak's complaint alleges that, after his employment was terminated, Santich solicited Xia to contact port officials in order to interfere with Vopak's lease negotiations with the Port of Los Angeles and that Santich disclosed to Xia that Santich was prevented from disparaging or criticizing Vopak by a

nondisparagement clause in his separation agreement. There are no allegations that these communications entered the public sphere or were intended to enter the public sphere. Instead, the allegations are that Santich arranged private meetings between Xia and public officials.

Vopak also alleged Santich solicited Joe Gatlin, the vice president of the NAACP branch at San Pedro/Wilmington, to disparage Vopak's reputation in the community based on false pretenses. Santich allegedly asked the NAACP to send a letter to Vopak to raise questions about its hiring and diversity practices. There are no allegations that this letter entered the public sphere or was even intended to enter the public sphere.

Further, when Vopak sent a cease-and-desist letter to Xia, the allegations are that Santich requested Xia to delete all e-mails, text messages, or tangible records of their dealings and efforts. This is another basis to find that the communications were not intended to enter the public sphere.

These allegations are that Santich's conduct was not related to any public conversation on the public issues. Instead, Santich was seeking to harm Vopak by interfering with Vopak's lease agreement with the Port of Los Angeles and causing Vopak to suffer ostracism due to suspicions about its hiring and diversity practices.

Santich failed to offer any evidence in either his moving or reply papers that his conduct was undertaken in connection with the identified public issues, e.g., he intended for the information to enter the public sphere and inform the public about favoritism, the potential for increased income, or lack of fair employment practices at the port.

17

Santich did offer facts in a declaration to deny he made any statements that violated his employment agreement, violated his separation agreement, disclosed Vopak's trade secrets, or interfered with Vopak's contracts. His attorney, Jack M.Rubin, describes an online article found in "Random Length News" about the lawsuit and the author's discovery, through reading the pleadings, that the Port of Los Angeles does not normally use competitive bidding. Gatlin, from the NAACP, describes his concern about hiring practices at the Port of Los Angeles and his efforts to gain information about Vopak's hiring practices after President Biden was elected.

None of these declarations show that Santich's conduct contributed to or furthered the public conversation. Instead, they concern Santich denying that he breached the employment and separation agreement. The online article summarizing the pleadings in this lawsuit shows that port operations are of public interest, not that Santich contributed to the public debate on that topic. Finally, the declaration of Gatlin includes facts that there was a public issue concerning the hiring and diversity practices and that the NAACP sought to gain information about these practices. It does not show that Santich contributed to the public debate on this issue.

Santich, therefore, failed to make a threshold showing that the challenged causes of action arise from protected activity. His arguments and evidence addressed the first part of the *FilmOn* analysis. Since he did not address the second part, he did not meet his burden of showing that the conduct was protected under section 425.16. His entire motion, therefore, was correctly denied.

In addition to challenging the trial court's ruling on the motion, Santich argued the trial court's denial of his request for

judicial notice was an abuse of discretion. Ordering the trial court to grant his request for judicial notice would serve no purpose. We decline to review an issue that will have no effect on the parties. (See Civ. Code, § 3532 ["The law neither does nor requires idle acts."]; *Garibaldi v. Daly City* (1943) 61 Cal.App.2d 514, 517 ["An appellate court will not determine a question which will have no effect upon the status of the parties."].)

The trial court did not err by granting the anti-SLAPP motion.

## DISPOSITION

We affirm the trial court's order. Respondent, Vopak Terminal Los Angeles, Inc., is to recover its costs of appeal.


_____
CHAVEZ, J.

We concur:


_____
LUI, P. J.


_____
ASHMANN-GERST, J.

19